ARTEMAS W. CAMPBELL AND OTHERS, PLAINTIFFS IN
ERROR, V. MARTIN B. HOLLAND, DEFENDANT IN
ERROR.

1.  Sale:  PURCHASE OF PROPERTY BY AGENT:  DECLARATIONS
    OF VENDOR:  EVIDENCE.  The evidence tends to prove that the
    plaintiff purchased one-half interest in the property in litigation,
    at a certain date, he then being in possession as agent, and con-
    tinued in possession until a subsequent date, when he pur-
    chased the remaining one-half interest.  The question being the
    *bona fides* of both of said purchases and sales:  *Held*, That the
    declarations of the vendor as to his interest in, and ownership of,
    said property, made after said first purchase and sale, but before

the last one, were admissible in evidence for the purpose of impeaching the plaintiff's title, but that such declarations made after the last purchase and sale were inadmissible.

2.   **Fraud**: EVIDENCE OF INTENT.   On an issue of fact as to whether an assignment or transfer of property was made to hinder, delay, or defraud creditors, it is competent, where the assignor, or vendor, is a witness, to enquire of him whether in making the assignment or transfer he intended to delay or defraud his creditors.   See *Seymore v. Wilson*, 14 N. Y., 567.

3.   ———— : ————.   The same rule applies to cases when the assignee or purchaser is called as a witness.

4.   **Evidence**: BOOKS OF ACCOUNT.   On the trial defendants cross-examined the plaintiff as to certain erasures in his account books and a leaf of one of them which appeared to have been torn out; he answered that the erasures had been made by himself to correct errors, and the leaf torn out also by himself, because it had been accidentally soiled and rendered unfit for use ; defendants afterwards offered said book in evidence, which offer was refused.   *Held*, No error.

5.   **Evidence**: WITNESSES.   When upon the examination or cross-examination of a witness a certain conversation is drawn from him in evidence, the opposite party will always be permitted to cross-examine, or re-examine him for the purpose of eliciting the whole of such conversation.   The scope of such examination is a question peculiarly for the trial court.

6.   ———— : ————.   The plaintiff being a witness in his own behalf was cross-examined as to the source from which he derived the money used in the purchase of the property in litigation, and having answered that a certain portion of it had been received by him in payment of a loan previously made to his father, an attempt being made, as well in his further cross-examination as otherwise, to discredit his statement in this behalf, he was permitted to testify in rebuttal as to where he obtained the funds out of which said loan was made.   *Held*, No error.

7.   **Instructions to Jury**.   The instructions given to a jury must be construed together, and if when considered as a whole they properly state the law, it is sufficient.   *Bartling v. Behrends*, 20 Neb., 211.

8.   ————.   When the law applicable to the pleadings and evidence in a case, has already been fully given by instructions to a jury by the court on its own motion, it is not error to refuse further instructions.

9. **New Trial.** Where, upon a motion for a new trial founded on affidavits, all of the material facts contained in such affidavits are contradicted by affidavits in resistance, the judgment of the trial court denying such motion will ordinarily be upheld.

10. ————. A new trial will not be granted on account of newly discovered evidence merely cumulative in its character.

ERROR to the district court for Sarpy county. Tried below before WAKELEY, J.

*H. D. Travis* and *E. H. Wooley*, for plaintiff in error, on admissibility in evidence of declarations of vendor, cited: *Carney v. Carney,* 7 Baxter, 284. *Riehl v. Evansville Foundry Assn.,* 3 N. E. Rep., 633. *Hunsinger v. Hoffer,* 11 Id., 463. Testimony of assignor as to his intention to defraud, inadmissible. *Monteith v. Bax,* 4 Neb., 166. Sixth instruction asked for by plaintiff below should not have been given. Bump Fraudulent Conveyances (3 Ed.), 208. Fifth instruction given by the court is misleading. *City of Crete v. Childs,* 11 Neb., 252. *Harrison v. Baker,* 15 Id., 47. Third instruction given on behalf of plaintiff below is too broad. *Becker v. Koch,* 10 N. E. Rep., 701. Jury should have been instructed as to the issues. *Tipton v. Triplett,* 1 Metc. (Ky.), 570. *Dassler v. Wisley,* 32 Mo., 498. Sixth instruction asked for by us should have been given. *Pryor v. Coggin,* 17 Ga., 444. *Ratcliff v. Trimble,* 12 B. Mon., 32. And in support of 20th instruction, see *Newman v. Cardell,* 43 Barb., 448. *Smith v. Brown,* 34 Mich., 455. New trial should have been granted on account of misconduct of jury. Thompson & Merriam on Juries, Secs. 438 and 432. *Cole v. Swan,* 4 Green (Ia.), 32. *People v. Knapp,* 3 N. W. R., 927. And on account of newly discovered evidence. *Simmons v. Fay,* 1 E. D. Smith, 107.

*J. H. Haldeman* and *Charles O. Whedon,* for defendants in error. Declarations of vendor inadmissible.

*Miner v. Phillips,* 42 Ill., 123.  *Schebel v. Jordan,* 30 Kan., 354.  Evidence of assignor's intent admissible. *Starin v. Kelley,* 88 N. Y., 422.  Bump on Fraud, 593. Account books inadmissible.  *Masters v. Marsh,* 19 Neb., 458.  On misconduct of jury, cited: *Hodges v. Bales,* 102 Ind., 494.  *Epps v. State,* Id., 539.  *Johnson v. Greim,* 17 Neb., 448.  *Polin v. State,* 14 Id., 549.

COBB, J.

This was an action in the district court of Sarpy county, by Martin B. Holland against Artemas W. Campbell, sheriff of Sarpy county, and the sureties on his official bond, for levying on, seizing, taking, and carrying away, by the said sheriff, under an order of attachment issued to him out of the district court of Cass county, in an action therein pending, wherein the Commercial Bank of Weeping Water was plaintiff and Lawrence Holland and others were defendants, of a certain stock of lumber and building materials alleged to be the property of said Martin Holland, and in his possession.

Campbell, the principal defendant, answered, setting up the said order of attachment, alleging that the property set out and described in the plaintiff's petition was then and there the property, goods, and chattels of Lawrence Holland, defendant in said order of attachment, and justifying the taking of said property under and by virtue of said order; also alleging that at the time of said levy the said Martin B. Holland was present and made no objection to said levy being made, and made no claim whatever, as owner or otherwise, to said property, or any part thereof, so as aforesaid levied upon.  Also that said property levied on as aforesaid was at the time of said levy the property of said Lawrence Holland, and was not the property of the said Martin Holland, at that time, nor ever was the property of said Martin Holland.  Also that whatever pretended

claim, title, or ownership that the said plaintiff now asserts or claims to have in said property was derived from the said Lawrence Holland, and that said pretended title was conveyed by said Lawrence Holland to said Martin Holland, without consideration, and for the purpose of defrauding the creditors of the said Lawrence Holland, and especially the Commercial Bank of Weeping Water, in whose favor the said order of attachment was issued; that said Lawrence Holland and said Martin B. Holland are brothers, and that said pretended transfer of said property was made from Lawrence Holland to Martin B. Holland by collusion between said brothers, for the purpose of defrauding the creditors of said Lawrence Holland, and that the said Martin B. Holland has, in truth and in fact, no title, ownership, or interest in said property, but that the same was, at the time of said levy, and, for a long time prior thereto had been, the property of said Lawrence Holland, etc.

There was a trial to a jury, with a verdict and judgment for the plaintiff. The cause is brought to this court on error by the defendants, who assign the following:

"*First.* The court erred in excluding from the jury the testimony of J. S. Tewksbury and J. M. Roberts, in regard to conversations had by them with Lawrence Holland about the lumber yard in controversy, subsequent to the 19th day of April, 1886.

"*Second.* The court erred in admitting in evidence the testimony of Lawrence Holland that the sale from himself to his brother was an actual *bona fide* sale.

"*Third.* The court erred in admitting in evidence the testimony of Martin B. Holland that the sale from Lawrence Holland to himself was made in good faith.

"*Fourth.* The court erred in excluding from the jury the portions of the day book and ledger offered by plaintiffs in error.

"*Fifth.* The court erred in admitting the testimony of

Lawrence Holland to the effect that he claimed a defense against the $3,000 note held by the Commercial Bank of St. Louis.

"*Sixth.* The court erred in admitting the testimony of J. M. Roberts, J. S. Tewksbury, and Ed. Cooper on cross-examination, to the effect that Lawrence Holland claimed to have a defense against the $3,000 note held by the Commercial Bank of St. Louis.

"*Seventh.* The court erred in admitting the testimony of Martin B. Holland on rebuttal, as to where he got the money which he claimed to have loaned his father in 1885.

"*Eighth.* The court erred in giving instructions numbered 3, 5, 6, and 12, asked by defendant in error, and in giving instructions numbered 5, 6, 7, 8, 11, and 12, given by the court on its own motion.

"*Ninth.* The court erred in refusing to give instructions numbered 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20, asked by plaintiffs in error.

"*Tenth.* The court erred in permitting C. O. Whedon, one of the attorneys for defendant in error, to exhibit portions of the day book and ledger, which had been excluded, to the jury while making his argument.

"*Eleventh.* There was misconduct on the part of C. O. Whedon, one of the attorneys for defendant in error, in exhibiting to the jury portions of the day book and ledger which had been excluded from the evidence.

"*Twelfth.* There was misconduct on the part of the jury while deliberating upon the verdict in this cause.

"*Thirteenth.* There was misconduct on the part of the bailiff who had the jury in charge while they were deliberating upon the verdict in this cause.

"*Fourteenth.* The verdict returned by the jury is contrary to instructions numbered 1, 2, 3, 4, 9, and 10, given by the court on its own motion.

"*Fifteenth.* The judgment is contrary to the evidence and the law.

"*Sixteenth.* The court erred in overruling the motion for a new trial on the ground of newly-discovered evidence.

"*Seventeenth.* The court erred in overruling the motion for a new trial."

Upon the trial the defendants called J. S. Tewksbury, a witness on their behalf, and put to him the following questions:

Q. Did you hear the testimony of Lawrence Holland, last night, as to his having any conversation with you as to placing his property out of his name, and placing the Springfield yard in the name of Martin Holland?

A. I did not.

Q. State whether or not it is a fact that you had a conversation with him upon the train in relation to this matter?

Objected to, because no foundation was laid for this question on the examination of Mr. Holland, and also as immaterial, irrelevant, and incompetent. Sustained.

Q. I will ask you if, in the month of March, or thereabouts, you had a conversation with Mr. Lawrence Holland, upon the train on the Missouri Pacific railroad, about the matter of his placing this lumber yard out of his hands.

A. I don't think that I had in March.

Q. I will ask you if at any time, upon the train, you had a conversation with him upon that matter?

A. There was a conversation in regard to the lumber yard; it was some time in April.

Q. By the court: Where?

A. On the train, on the Missouri Pacific Railroad, between Springfield and Omaha.

Q. By Mr. Wooley: State what that conversation was?

Objected to as above.

Q. By the court: What time in April?

A. I couldn't state the exact date. I think it was the latter part.

38

Q. By Mr. Wooley: I will ask you if, upon the Missouri Pacific train, along in the month of April, Mr. Holland stated to you that his brother Martin Holland was running the Springfield yard in Martin's name, in order that, if the Commercial Bank of St. Louis got a judgment against him upon that note of $3,000, he could beat them on the execution.

Objected to as leading, and as above. Sustained.

The defendants also called J. M. Roberts, a witness on their behalf, and put to him the following questions, among others:

Q. State whether or not, soon after this yard at Springfield began to be run in the name of Martin Holland, if you had any conversation with Lawrence Holland about it, before the 19th day of April?

A. Yes, sir.

Q. State as near as you can what that conversation was, so far as it appertained to the Springfield yard being run in Martin's name?

A. I can't tell you the exact date, some time in March I think; I asked him if this yard, he spoke about the yard being run in Martin's name, if Martin had bought the yard; he said not; Martin was running it for half the profits, he to furnish the capital; he had agreed to furnish about $5,000, and he said to me, do you think I have sold it? I told him I did not know whether he had; he said, I have not, it is mine.

Q. State what, if anything, he said in the conversation about why it was run in Martin's name?

Objected to as immaterial and leading, and assuming a fact not proved. Sustained.

Q. State whether or not he said anything about why it was run in Martin's name?

A. Yes, he did.

Q. Now state what he said?

A. He said he wanted to fix his property so that if

they got judgment against him on that note, they could not find any property to levy an execution on ; he wanted to put it in that shape to avoid the payment of that note.

    *      *      *      *      *      *      *

Q. State if, between the first day of March and the 19th day of April, Mr. Lawrence Holland came to Spring-field and, at the time, told you he came here to sell this yard ?

Objected to as leading, incompetent, and immaterial. Sustained.

Q. State what, if anything, Mr. Lawrence Holland, between the 1st day of March and the 19th day of April, said to you about selling this yard at Springfield ?

A. He told me he was coming up here to see about selling it, to raise some money.

Q. I will now ask you what, if anything, Mr. Holland said to you about the ownership of that yard between the 1st day of March and the 19th day of April ?

A. He said it was his yard.

Q. I will ask you to state, what, if anything, he said to you about selling this yard the 1st day of June, 1886.

Objected to as irrelevant, immaterial, and incompetent. Sustained.

According to the testimony of Martin B. Holland he purchased a one-half interest in the lumber yard in the latter part of February, and the other half on the 19th day of April, 1886. It was evidently the intention of the trial court to admit any declaration of Lawrence Holland made in reference to the ownership or transfer of said yard or any interest therein prior to said last mentioned date, and to exclude all such declarations made by him subsequent thereto. Under the authority of the first case cited by counsel for plaintiff in error, this was right. In that case, *Carney v. Carney*, 7 Bax. (Tenn.), 284, Carney, Sen., while insolvent, had conveyed without consideration to Carney, Jr., his son, certain lands of which the vendor

remained in the actual possession. The case turned on the *bona fides* of this sale. On the trial the declarations of Carney, Sen., made after the conveyance, but while he remained in the actual possession of the land, were admitted in favor of the party attacking the sale. The court, in the the syllabus, say: "As a general rule the declarations of a party made after he has parted with his interest in the subject-matter of litigation cannot be received to disparage the title or right of a party acquired in good faith previous to the time of making such declarations. But this very just and reasonable principle must be taken as inapplicable to cases of fraudulent sales of property. If, for example, a conveyance is made absolute on its face, and the vendor continues to retain possession of the property, as before, this being *prima facie* evidence of fraud, a creditor, impeaching such conveyance on the ground of fraud, may be admitted to prove the declarations of the vendor, thus retaining the possession in relation to the ownership, or the character of his possession of the property."

Counsel for plaintiff in error seem to claim that the declarations of Lawrence Holland in regard to the ownership of the lumber yard, without regard to the time when such declarations were made, are admissible in evidence on the part of the party attacking the sale, on the ground that they are the declarations of a co-conspirator of the party sustaining the sale. I doubt the application of the peculiar law of conspiracy to a case like the one at bar. And were it conceded to be applicable to such cases, in general, it could only be applied after proof of a conspiracy including the party to be affected by the declarations as well as the one making them.

The second and third assignments will be considered together.

At the trial the plaintiff was recalled as a witness in his own behalf, and asked the following questions:

Q. I will ask you to state what knowledge you had,

if any, of the indebtedness of your brother at the time of
the sale to you of this property. State all of the facts in
regard to this matter.

A. I had no knowledge whatever of his indebtedness;
any indebtedness.

Q. What was your purpose in buying this property?

A. More than anything else, to do business for myself.

Q. Was this done for the purpose of assisting your
brother to cover up his property in any way?

Objected to as calling for a conclusion of the witness.
Overruled.

A. No, it wasn't.

Lawrence Holland, upon his examination in rebuttal, as
a witness for the plaintiff, had the following questions pro-
pounded to him:

Q. I will ask you to state whether or not the sale and
transfer of this property in controversy in this action, to
the plaintiff, was made for the purpose of defeating or hin-
dering any of your creditors in the collection of their
debts?

Objected to as incompetent and not proper rebuttal.
Overruled.

A. It was not, as I didn't count at the time I had any
creditors only what were amply secured.

And again:

Q. State whether or not the sale to your brother of the
property in question was an actual *bona fide* sale of the
property by you to him.

Objected to as not proper rebuttal, calling for a conclu-
sion of the witness and incompetent. Overruled.

A. Yes, sir, it was.

The admission of this testimony constitutes the ground
of the 1st and 2d assignments. The only authorities cited
in support of this point is the case of *Monteith v. Bax*, 4
Neb., 166. That case is only authority to the effect that,
"The question of intent in case of an alleged fraudulent

conveyance of property  *   *   *   is one of fact for sub-
mission to a jury."

In the courts of the state of New York it seems to have
been settled by the case of *Seymour v. Wilson*, 14 N. Y. R.,
567, that, "On an issue of fact as to whether an assignment
or transfer of property was made to hinder, delay, or de-
fraud creditors, it is competent, where the assignor is a
witness, to enquire of him whether in making the assign-
ment or transfer he intended to delay or defraud his credit-
ors." See also *Cunningham v. Freeborn*, 11 Wend. R.,
240. Also *Persse & Brooks Paper Works v. Willett*, 19
Abb. Prac. R., 416.

Upon the cross-examination of the plaintiff his attention
was called to certain erasures made in his books of account,
and the fact of two or more leaves having been torn out of
his ledger, page 121, was corrected by an erasure, and
pages 119 and 120 torn out. His attention was also called
to his day-book, and he stated in answer to questions by
counsel for defendants that certain items were posted to
pages 119 and 120 of the ledger which had been torn out.
He also stated that these erasures had been made and leaves
torn out by himself, to correct errors and mistakes which
he had made of entries therein.

After plaintiff had closed his case in chief, and defend-
ants had entered upon the examination of witnesses on
their behalf, they offered the several pages of the plaintiff's
day-book and ledger, showing the said erasures, alterations,
etc., in evidence, which was refused by the court; which
refusal forms the basis of defendant's fifth assignment of
error. I am somewhat at loss as to the purpose for which
defendants sought to introduce the books in evidence.
Surely not as books of account, to prove charges made by
one party against the other, which, as I think, and as this
court has often held, is the only purpose for which books
of account, simply as such, are admissible in evidence. If
the purpose was to weaken the force of plaintiff's testi-

mony as to the fact of his purchase of the lumber yard, and collateral facts, then that purpose would be accomplished as well by the cross-examination of plaintiff in respect to these erasures, alterations, and missing pages; as well without the admission of the books themselves, technically, in evidence, as with. It appears from the tenth assignment of error that upon the argument of the case to the jury the court permitted counsel for the plaintiff to exhibit these books to the jury and comment upon these faulty and missing pages in his argument. The court would, doubtless, have recognized this right in the counsel for defendants also had they chosen to avail themselves of it, and by that means all the advantage which could possibly have been gained by the admission of the books in evidence would have been attained without. But as a question of law, I know of neither principle nor authority that was violated by the exclusion of the books when offered in evidence.

The fifth and sixth assignments may be considered together.

After the examination-in-chief of the witness, Lawrence Holland, by counsel for plaintiff, he was cross-examined by the other side; first, about a certain trip which they claimed witness had made to Springfield, shortly after April 19, 1886, for the purpose of selling the lumber yard in question; and, among others, they asked him the following questions:

Q. Isn't it a fact that you came to Springfield very close to the first day of June, after certain notes of yours, one for $4,000 and one for $3,000, had become due at the Commercial Bank, and that you then told Mr. Roberts that you were coming here to try and sell those yards to pay that note?

A. No, sir.

Q. When did those notes become due?

A. The 19th day of May.

\*      \*      \*      \*    . \*      \*

Q. I will ask you if it is not a fact that about this time, March 1, 1886, the Commercial Bank of St. Louis held a note against you of $3,000, and that Tewksbury & Cooper were endorsers upon that note?

A. I don't know who held the note on the 1st day of March.

Q. Is it not a fact that there was in existence a note of $3,000, which you had given Tewksbury & Cooper, which had been endorsed by them to some one, and if the Commercial Bank of St. Louis did not claim to hold that note?

A. I don't know, really, that the Commercial Bank claimed any ownership; there was such a note out, but I don't know; the Commercial Bank didn't claim to own it at that time.

Q. Is it not a fact that yourself and Mr. Tewksbury had several conversations in regard to that note, and how you could avoid the payment of it?

A. In regard to how we could fix it to not pay it? There was no conversation in regard to not paying the note, except how we could bring a claim against Redmond, Clary & Co.

Q. This note was first transferred by Tewksbury & Cooper to Redmond, Clary & Co.?

A. Yes, sir.

On re-direct examination, counsel for the plaintiff put the following questions to the witness :

Q. You may state the facts in regard to this transaction with Redmond, Clary & Co.; what the real facts were, whether you were indebted to them or not ?

Objected to as immaterial and irrelevant and incompetent, and not redirect. Overruled.

A. My claim against Redmond, Clary & Co. amounts to something like $7,000 ; the note was for $3,000.  \*  \*

Q. Did you, in fact, owe them anything?

A.   No, sir, I didn't; they owe me over $7,000.

J. M. Roberts, cashier of the Commercial Bank of Weeping Water, was sworn and examined as a witness for the defendants. He was cross-examined by counsel for the plaintiff, re-examined and re-cross-examined, but I find nothing in his testimony to which the assignments under consideration will apply.

J. S. Tewksbury was sworn and examined as a witness on the part of the defendants. In the course of his examination the following questions were put to him, which he answered as follows:

Q.   State if you were an indorser upon the $3,000 note that was in the hands of the Commercial Bank of St. Louis?

A.   I was.

Q.   I will ask you if you were not made a party upon that suit on the note, in the United States court?

A.   I believe I was.

Q.   When did that note mature?

A.   Came due the first of March, I think.

Q.   State if you and Mr. Holland had a conversation in regard to that note about the time it became due?

A.   Shortly afterwards.

Q.   I will ask you if, within a few days, four or five, after this note became due, you had a conversation with Lawrence Holland about it?

A.   I did.

Q.   State fully what he said, if anything, about putting his property out of his name, so as to defeat the collection of that note?

A.   He said he had his property in such a shape that he could and he would do it, before he would pay it, etc.

On cross-examination by counsel for plaintiff:

Q.   At the time you say you had this conversation with Lawrence Holland in regard to Redmond, Clary & Co. business at St. Louis, that note, you say that Holland said he would not pay the note?

A.   He said he did not intend to.

Q.   Did he say at that time that Redmond, Clary &
Co. owed him?

Objected to as immaterial, and not proper cross-examina-
tion.   Overruled.

Not answered.

Q.   Did he say in that conversation that Redmond,
Clary & Co. owed him?

A.   He had a claim against them.   He said he had.

The object of this cross-examination of Lawrence Hol-
land, and examination-in-chief of J. S. Tewksbury, by
counsel for defendants was to show the motive on the part
of Holland for selling or putting the lumber yard out of
his hands, to avoid paying the note spoken of.   For that
purpose they drew out a statement of certain facts from
Holland.   The additional facts drawn out on re-examina-
tion by counsel for plaintiff were, as I think, proper for
the purpose of exhibiting the entire transaction to the jury,
and the evidence was admissible.   The examination of the
witness, Tewksbury, was addressed to a certain conversation
between him and Lawrence Holland; and his cross-exam-
ination by counsel for plaintiff was proper and admissible
for the purpose of presenting the entire conversation, and of
presenting that part of it which might be deemed favorable,
as well as that which was unfavorable to the plaintiff.   I
know of no principle of the law of evidence more firmly
settled than that when a part of a conversation is drawn
out by one party, the other party has the privilege to draw
out, from the same witness, the entire conversation.

As to the seventh assignment, counsel for the defendant
had rigidly cross-examined the plaintiff as to the source
from which he had derived the money which he had loaned
to Lawrence Holland, and which he claimed constituted a
part of the consideration for the purchase of the property
in litigation.   Some of this money he claimed to have re-
ceived from his father, in payment of a loan made to him

a year or more before. The object and tendency of much of this cross-examination was to cast a doubt and discredit upon this claim of the plaintiff, and I think it was altogether proper to allow the plaintiff to testify in rebuttal, as to where he obtained the funds out of which said loan was made; and I know of no principle of law which was violated thereby.

The eighth assignment is based upon certain instructions given by the court to the jury. In this assignment there is some confusion. The record shows that all of the instructions asked for by either party were refused, the court having already, as shown by the sequence of the record, given sixteen instructions on its own motion, as follows:

"1st. The action is brought against the defendant Campbell, who is the sheriff of this county, and the other defendants, who are sureties upon his bond, given as such sheriff before entering upon the duties of his office.

"2d. The alleged ground of action is, that the conditions of the bond were violated, by reason of the sheriff, through his deputy, wrongfully seizing and taking possession of the stock of lumber and other property in question, as to which evidence has been given.

"3d. It is conceded in the case, and you should assume this to be true, at the time of the levy in question the sheriff, Campbell, had in his hands an order of attachment issued in an action commenced in Cass county, Nebraska, in which the Commercial Bank of Weeping Water was plaintiff, and one Lawrence Holland was defendant; and that the property in controversy was levied upon and seized under such order of attachment, as being the property of Lawrence Holland.

"4th. If this property so levied upon and seized, or an undivided interest therein, was the property of Lawrence Holland, as between him and his creditors, then such levy and seizure were lawful and the plaintiff cannot recover.

"5th. If on the contrary the property was wholly the

property of the plaintiff, as between him and the creditors of Lawrence Holland, the order of attachment gave the sheriff no authority to levy on the property, and the plaintiff is entitled to recover. It appears in evidence that prior to any transfer of the property to plaintiff, Lawrence Holland had an interest therein as a member of a firm to which it belonged; that such firm made a transfer of the property to the plaintiff, and that subsequently Lawrence Holland transferred to the plaintiff whatever interests he had therein. By these transfers the title to the property rested in the plaintiff, as between the parties to the transfers, but whether or not such transfers were valid as to the creditors of Lawrence Holland is a different question involving other considerations, and it is one of the principal questions for you to determine.

"6th. If the sale or transfer of the property, or an interest therein, was made with the intent to hinder, delay, or defraud the creditors of Lawrence Holland, and if the plaintiff knew of such intent when he purchased the same, then such sale or transfer was void as to such creditors, and the sheriff had a right to make the levy and seizure in question, and this action cannot be maintained. And in such case the payment of a valuable or a full consideration for the property or interest purchased would not protect plaintiff, but such sale or transfer would still be void as to Lawrence Holland's creditors.

"7th. If, however, the plaintiff paid a valuable consideration for the property, and bought the same in good faith without any knowledge of an intent on the part of Lawrence Holland to hinder, delay, or defraud his creditors, then the plaintiff acquired a valid title thereto, notwithstanding any fraud, if such there was, on the part of Lawrence Holland; and notwithstanding the consideration paid was not the full value of the property, should you find that such was the fact.

"8th. In determining whether or not Lawrence Hol-

land intended to hinder, delay, or defraud his creditors, you may inquire into the extent of his indebtedness; and of his property and means of meeting it; and as to how far the same was secured, whether in whole or in part; and as to whether he claimed in good faith to have a defense to any apparent indebtedness against him; and generally as to whether he had or had not a motive or inducement to place his property beyond the reach of creditors. But the mere fact that he claimed to have and believed he had a good defense against notes which he had given would not justify him in transferring property for the purpose of protecting it against proceedings for enforcing a claim on such note.

" 9th.  As to plaintiff's knowledge of a fraudulent intent on the part of Lawrence Holland it is not necessary that plaintiff should have had actual and positive knowledge of such intent, if it existed, but if he had knowledge of facts and circumstances tending to show the existence of such an intent, and sufficient to lead a man of ordinary perception, care, and prudence to suppose that there was such an intent, this would be equivalent in law to a knowledge thereof if in fact there was such fraudulent intent on the part of Lawrence Holland.

" 10th.  Evidence was received during the trial as to acts and declarations of Lawrence Holland prior to the transfer in question.  These were received only as against him, and as tending to show a fraudulent intent on his part, but they are not evidence against the plaintiff to show fraud or knowledge of fraud on his part, and it is necessary to show his participation in the fraud by other evidence.

" 11th.  In determining whether the transfers in question were fraudulent as to creditors you are at liberty to consider the relation of the parties thereto to each other, the time and circumstances thereof, whether or not Lawrence Holland was indebted beyond his means of payment, or had a motive to place his property beyond the reach of

his creditors, whether or not the plaintiff knew or had the means of knowing his brother Lawrence's financial condition, or with what motive or purpose he was making the transfer, what the plaintiff's means of payment were, and his object in making the purchase, the value of the property and the amount paid therefor, and all the facts and circumstances of the transactions appearing in evidence, including the agreement as to the terms on which Lawrence Holland was to hold the note taken in part payment.

"12th.   Fraud is not to be presumed ; and in this case the burden of proof is upon the defendant to satisfy you by a preponderance of evidence of a fraudulent intent on the part of Lawrence Holland and knowledge thereof on the part of the plaintiff.

"13th.   Where in the trial of a suit a party places a witness upon the stand he thereby indorses his reputation for truth and veracity, and he will not be permitted to say that such witness is unworthy of belief.

"14th.   The court instructs the jury that under the pleadings and proofs in this case the plaintiff is not estopped from asserting his right to the property in controversy.

"15th.   If the jury believe from the evidence that the plaintiff actually and in good faith purchased the property in question from Lawrence Holland, without any fraudulent intent on his part, and with no knowledge of a fraudulent intent on the part of his grantor, then it is wholly immaterial whether or not the consideration paid, either in money or notes, was equal to the value of the property so purchased by plaintiff.

"16th.   It is admitted by the said defendant and Artemas W. Campbell that the property in question was, on the 24th day of June, 1886, by his deputy, taken from the possession of the plaintiff, and it is also admitted that said defendant has ever since deprived the plaintiff of the possession of the same, and if the jury believe from the evidence that the property in question did at the time this

action was commenced belong to the plaintiff, then the measure of damages for plaintiff to recover will be the value of the property at the time of the taking as shown by the evidence, with interest thereon at the rate of seven per cent per annum from the 24th day of June, 1886, up to the first day of this term of court, to-wit, November 8th, 1886."

Counsel, in their brief, urge objection to the sixth instruction on two grounds. *First,* as to the knowledge on the part of Martin Holland of the fraudulent intent of Lawrence. It is assumed that this instruction was wrong, and hence that a subsequent one, stating the law correctly, would not remedy the wrong. To this point they cite the case of *Wasson v. Palmer,* 13 Neb., 376. The point in that case, to which reference is doubtless made, is thus stated in the syllabus : "If one of the paragraphs in the charge of the court to the jury misstate the law upon a material point, such error will not be cured by another paragraph which states the law correctly ; because the jury will be left in doubt as to which paragraph was correct."

The sixth paragraph of the charge which we are now considering does not misstate the law. While it does not fully state the law applicable to the point being considered, so far as it goes, it states it correctly. And in so far as it falls short of stating the law fully, that deficiency is supplied by the ninth paragraph of the same instructions.

In the case of *Bartling v. Behrends,* 20 Neb., 211, the court, in the syllabus, say : "The instructions given to a jury must be construed together, and if when considered as a whole they properly state the law, it is sufficient."

*Second.* Under this subdivision counsel in the brief say : "The jury are told that under the circumstances it would be wholly immaterial whether or not the consideration, paid either in money or notes, was equal to the value of the property so purchased by plaintiff."

Of this objection it is deemed sufficient to say that I place no such construction upon the language of the in-

struction.   It would be easier to place that construction upon the language of the seventh instruction, but, even if so applied, it would be strained and unnatural.

Counsel misprint in the brief, and evidently have misread the fifth instruction.   A careful reading of it cannot fail to show that the court did not tell the jury that "Martin acquired some title by the transaction," but that by virtue of the transfer of the property by Beardsly, Clark & Co., and the subsequent transfer by Lawrence Holland of all interest he had in the property to Martin Holland, he acquired the title to the property as against Beardsly, Clark & Co. as a firm, and Lawrence Holland, but leaves the question of title as between Martin Holland and Lawrence Holland's creditors to other considerations, which the court declared to be one of the principal questions involved in the case.

As to the eighth instruction, I think the law is well and carefully expressed.   Its meaning, I understand to be, that, while the belief on the part of Lawrence Holland that he had a valid defense to the $3,000 note would not justify him in putting his property out of his hands, for the purpose of avoiding his possible liability to pay it, yet such belief on his part might be considered, among other facts, in arriving at a conclusion as to whether or not he had a motive or inducement to place his property beyond the reach of his creditors.

The eleventh instruction is objected to as leaving it to the option, or whim, of the jury whether they should consider the several matters therein mentioned or not.   It will not be contended that it would have been proper for the court to have told the jury what degree of weight they should give to any, or all, of the several matters referred to in the said instruction.   It was addressed to a jury supposed to be impartial, as between the parties, and open to instruction as to what portions of the great mass of testimony in the case it was proper for them to consider, in

arriving at their verdict. Had the instruction told them that in considering of their verdict it would be proper for them to take into consideration the several matters therein specified, no one could doubt its correctness, and that is the sense in which the language actually used was, and should have been, understood by the jury.

The objection of counsel to the twelfth instruction involves the same considerations as those already passed upon, while discussing the sixth paragraph, and it is deemed unnecessary to repeat them.

The third instruction stated by counsel in the brief to have been given at the request of the plaintiff, appears in the above list of instructions as given by the court on its own motion, as paragraph 13. It states the law correctly; *non constat*, that a party may not at a trial call the opposite party, or a witness, who proves, upon his examination, to be unfriendly to the party calling him, and then call other witnesses to contradict his evidence.

The following instructions were asked by the defendants and refused by the court, and to which refusal the defendants excepted:

"II. In determining the question of whether or not the sale, if you find there was one from Lawrence to Martin Holland, was fraudulent and made with the intent to defraud the creditors of Lawrence Holland, you should take into consideration all the surrounding circumstances as shown by the evidence. Fraud can seldom be proven by direct testimony, because fraudulent purposes are generally kept secret by those interested, and hence the law permits fraud to be shown by proving the surrounding circumstances having a tendency to show fraud.

"III. A sale to a near relative does not of itself show fraud, but when the seller is heavily in debt or insolvent, and sells property to a near relative, it is proper for you to take into consideration the fact that the purchaser is a near relative of the seller, and if there are any circumstances

39

brought out by the evidence, such as a knowledge by the purchaser of the seller's financial embarrassment, or any secresy in the sale, or any exercise of authority over the property by the seller after the sale, or inadequacy of consideration paid them, the fact of relationship becomes an important one, and you should give it proper weight in determining whether the sale from Lawrence Holland to Martin Holland was made to defraud the creditors of Lawrence Holland or not, to hinder or delay his creditors in the collection of their debts, and Martin Holland bought said property in order to assist his brother in said purpose, or had such notice of the fraudulent intent of his brother as to put an ordinarily prudent man upon inquiry, then such sale would be fraudulent and void in law, and stand as no sale at all, and the property would, in law, remain the property of Lawrence Holland and be subject to attachment for the payment of his debts, and your verdict should be for the defendants.

"V. The jury are further instructed that the change of possession from the vendor to the vendee, in contemplation of law, is an actual change of possession and not a merely constructive change, and is an open, visible, and public change, showing that the property was actually transferred from Lawrence Holland to Martin B. Holland, and that the possession of an agent is constructively the possession of his principal; and if the jury find that Martin B. Holland was a servant or agent of Beardsley, Clark & Co., of which firm Lawrence was a silent member, and that Beardsley, Clark & Co., as a matter of fact, transferred said lumber yard to Lawrence Holland in place of to Martin B. Holland, and that Martin B. Holland pretended and held out to the public that he was the vendee of Beardsley, Clark & Co., then there was no actual change of possession, such as is contemplated by the law, and if you find the facts to be as stated above then said Martin B. Holland was possessed of knowledge of facts sufficient to put him

on inquiry, and was in a position to know why Lawrence Holland did not make the sale openly to Martin B. Holland in place of having his vendor convey over him to said Martin, and you must find for the defendant.

"VI.   If you find that the said Martin B. Holland, plaintiff, did not make any claim of ownership of the yard in controversy when the levy was made upon it by the sheriff, and did not bring such claim to the notice of said defendant, then it is a strong circumstance going to show that said Martin B. Holland was not the real owner of said yard.

"XI.   A conveyance of personal property by one largely in debt, especially where the creditors are insisting on settlement, and where the grantor and grantee sustain the relation of brothers, creates presumption of fraud, and requires clear proof on the part of the grantor and grantee to remove, and the fact that a full price was paid for the property will not rebut the presumption of fraud.

"XII.   The jury are instructed that every man intends the necessary consequences of his own acts, and if the conduct of a debtor results in defrauding his creditor he is presumed to have foreseen the result, and intended it; and a transfer made out of the usual course of business is evidence of fraud.

"XIII.   If you find that Martin B. Holland was a creditor of Lawrence Holland, and accepted a conveyance of the said lumber yard under circumstances that would put an ordinarily prudent man on enquiry, he is not a purchaser in good faith, and is a participant in the fraud of this grantor.

"XIV.   If the jury find that Martin B. Holland, at any time after March 1st, 1886, conducted said lumber yard in the name of Martin B. Holland, and was really not the owner of said yard, but was receiving a share of the profits as compensation, and that Lawrence Holland was the real owner, and had creditors who were pushing

him for settlement, or threatening suit, then the presumption of the law is that the pretended ownership of said Martin B. Holland was fraudulent as to creditors, and that a state of relations once proved to exist between parties continues to exist until the contrary is proven.

"XVIII. You are further instructed that any collusion between Lawrence Holland and Martin Holland for the benefit of Lawrence Holland would render the transfer void. If you find from the evidence that a note was given for the yard, either as a fictitious consideration, or secretly, as a part of the consideration, so that Lawrence Holland could control the note for his own use, this would be a fraud upon the creditors of Lawrence Holland, and make the transfer void, and your verdict should be for the defendants.

"XX. You are further instructed that when the fraudulent intent of the grantor is shown, the grantee must show the payment of an adequate consideration by competent evidence. The facility with which a fictitious consideration may be fabricated renders it necessary for him to produce all the proofs, which may reasonably be supposed to be in his power, of the reality and fairness of the transaction, and the want of clear proof is evidence of fraud; such proof is vital to uphold a transfer in other respects surrounded with suspicion; and this requirement is not met by the mere proof of payment without showing where the money came from, and how it was obtained; and if the grantee claims to have had money loaned out with which he made payment, then his failure to produce the testimony of any of the persons to whom it was loaned, or the written evidences of the debt, or the mortgages by which it was secured, if any of these things may reasonably be supposed to be in his favor, are circumstances to be taken against him."

It would be impossible, without extending this opinion to an inadmissible length, to discuss these instructions. I

will, therefore, content myself with saying that, in so far as they state the law applicable to the pleadings and evidence in the case correctly, the same was given in equally correct language in the instructions by the court on its own motion; and that when such is the case such additional instructions may properly be refused.

Counsel, in the brief, complain that the court failed to instruct the jury as to the issues in the case. While this complaint may have some foundation as matter of form, it has none in reality. The first five instructions sufficiently present the issues in the case, and it may be added that none of the instructions presented by defendants, and refused, purport to contain a statement of the issues.

Defendants claim that there was misconduct on the part of the jury, for which they were entitled to a new trial, in that one of the jurors separated himself from his fellows after they had retired and before they had agreed upon their verdict. Also that there was misconduct on the part of the bailiff having said jury in charge. I have carefully examined and considered the voluminous supplemental bill of exceptions containing the affidavits both in support of and in resistance to the motion for a new trial. The evidence contained in these affidavits is altogether conflicting. Not a material fact is alleged in the affidavits in support of the motion which is not denied or explained away by those in resistance.

The above does not fully apply to the allegations of newly discovered evidence. This consists in the fact that J. F. Parkins would testify that in February, 1886, he told the plaintiff that Lawrence Holland had told him that he expected to have trouble with Redmond, Cleary & Co., in regard to losses which they claimed he had sustained in *option deals*; that plaintiff said in reply that he, Lawrence, had too much confidence in Redmond, Cleary & Co., and that they would *beat* him some day.

This testimony, if admissible in chief, would be valuable

only as cumulative evidence. As an independent fact such conversation between the plaintiff and Parkins would fall far short of proving or establishing facts within the knowledge of the plaintiff sufficient to amount to constructive notice of his brother's insolvency or fraudulent purpose in disposing of the lumber yard. A new trial will never be granted on account of newly discovered evidence merely cumulative in its character.

Finally, the testimony is too conflicting upon every material point, even where there may seem to be a preponderance in favor of the defendant, to admit of a reversal of the judgment on the ground that the verdict is not sustained by the evidence.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

REESE, J., concurs.

MAXWELL, CH. J., dissents from the judgment.