GEORGE H. GUTRU, APPELLEE, V. GEORGE R. JOHNSON ET AL.,
APPELLANTS.

FILED MARCH 1, 1927. No. 25719.

1. Judgment: INSUFFICIENCY OF EVIDENCE. Evidence examined,
   and *held* insufficient to sustain the trial court in holding that
   the judgment in question was obtained by perjured testimony
   on the part of the plaintiff.

2. ———: SETTING ASIDE: NEWLY DISCOVERED EVIDENCE. Newly
   discovered evidence which is merely cumulative in character
   will not entitle a party to a new trial, nor will such evidence
   justify a court of equity in setting aside a judgment obtained in
   a law action.

3. ———: ———: DILIGENCE. If by the exercise of reasonable
   diligence a defendant may produce evidence disproving the testi-
   mony of a plaintiff and proving the latter a perjurer because
   of giving the same, but fails to do so and suffers a judgment in
   consequence, he may not rid himself of said judgment by pro-
   ducing such evidence in a suit in equity brought for that pur-
   pose.

APPEAL from the district court for Madison county:
DE WITT C. CHASE, JUDGE. *Reversed and dismissed.*

*William McDonnell* and *Sullivan, Wright & Thummel,* for
appellants.

*C. C. Flansburg* and *H. Halderson, contra.*

Heard before ROSE, DEAN, DAY, GOOD, THOMPSON and
EBERLY, JJ., and SHEPHERD, District Judge.

SHEPHERD, District Judge.

This is the third appearance of this controversy in this
court. It was first here on appeal from a judgment in dam-
ages obtained by Johnson against Gutru for fraud in the
sale of land; and the judgment was affirmed. Next it came
to the supreme court on appeal from an order of the district
court denying an amended application for a new trial on
the ground that there had been irregularity in obtaining
the judgment and misconduct on the part of the jury,
which appeal likewise resulted in an affirmance. Then

Gutru brought suit in equity alleging that the described judgment had been procured by perjury, and again urging in a second cause of action that the jury had been guilty of misconduct.    Issue having been joined, trial was had and the district court entered a decree finding for Gutru on the charge of perjury by him preferred against Johnson and enjoining the collection of the judgment.    Johnson appealed and now the matter is here again, this time on the correctness of the decree of the trial court in said equity case.

A cross-appeal was taken by Gutru upon a ruling of the trial court dismissing his second cause of action.    Three things lead us to conclude that this ruling was correct.    In the second appeal he contended that the proceeding was substantially under section 9160, Comp. St. 1922, and that the precise matter was therein presented upon its merits.    If it was, and there is nothing in the record to show to the contrary, the question stands adjudicated.    In the second place and in any event, having a remedy at law under the section named, he abandoned it and cannot now be permitted to ask relief in equity.    We have examined the cases cited in the briefs and are constrained to believe that the great weight of authority is against such procedure.    "It is an elementary principle that courts of equity will not take jurisdiction of causes where the plaintiff has a complete remedy at law, even though the party complaining may not have availed himself of that remedy, and by laches deprived himself of it."   *Proctor & Hunter v. Pettitt,* 25 Neb. 96; *Krause v. Long,* 109 Neb. 846.    And, finally, while the quoted remarks of the two jurors may show that they were prejudiced against the appellee, they do not prove that their prejudice prevented them from deciding upon the law and the evidence, and it does not appear that they communicated their prejudice to each other or to any of the other members of the jury.

The complaint as to the ruling on the first cause of action, i. e., the complaint of Johnson that the evidence was insufficient to sustain the holding that the judgment was procured by perjury on his part, presents far greater difficulty.

First of all, appellant contends with much force that the trial court should have found that by exercise of reasonable diligence Gutru might have produced all of the evidence adduced in the equity case on the original law trial, and therefore that it should have refused to consider the question of perjury at all, for the reason just recognized that one who has a law remedy and loses it through laches will not be aided by equity.

There is much to sustain that contention. There is little or no evidence in this case tending to show that the testimony of Johnson in the jury case was false or perjured that could not have been produced in that case, had the appellee exercised due diligence. We have examined, not only the evidence pointed out in the briefs, but the whole of the evidence, and are convinced that, with the fair warning that the petition in the original case gave, Gutru was bound to know that his adversary was going to swear upon the stand that he had had a conversation with him about the land in question, and had been told that the soil was all black, deep and rich, etc. From the same source it must have been equally obvious to the appellee that Johnson would testify to a conversation with Gutru about Blair and his agency, and to a conversation with Blair about Gutru and his statements in regard to the land, and also about the refusal of Blair to permit Johnson to examine the farm, etc. Appellee did not have Blair's evidence in the damage case, though thus apprized that Blair and his acts and representations would be under fire before the jury. He stated that he could not locate him. Blair had lived at Royal where Gutru's brother-in-law and agent, Staab, lived and conducted a bank for Gutru. A somewhat damaging letter written by Johnson to Blair was produced in evidence, indicating the probability of contact and understanding between the latter and the appellee. The evidence discloses that half an hour's inquiry at Royal would have elicited information that Blair was at Fremont. It is patent that the slightest diligence in preparation for trial would have enabled Gutru to meet the testimony of Johnson, as anticipated false testimony, with

all the opposing evidence produced by him upon final trial
to the judge, that is to say, upon the trial of the equity case.

Appellee insists that certainly in one particular he could
not have done so; that the immutable evidence of the Spen-
cer hotel register containing his signature under date of
July 30, 1919, came to him only after a period of something
more than three years, long after he might have used it in
a proceeding under the statute, section 9160, Comp. St. 1922.
He declares that his notice was drawn to the fact that he
was at Spencer on the 30th of July only because one of his
witnesses happened to find a check which reminded him of
the circumstance, and led him to speak about it.   Surely,
he says, this evidence was not obtainable at the time of the
jury trial.   It was brought to him only by a chance, an un-
forseen circumstance, a happening of years after.

This might be unanswerable but for the fact that the pe-
tition apprized him that the date of the conversation was
July 31, a consideration which entirely changes the situa-
tion because it must have suggested to him as a matter of
first importance that his whereabouts on the 31st should
be definitely established, to the end that he might refute
the expected perjury.   Then the matter of his whereabouts
could have been ascertained with comparative ease.   If a
litigant may neglect such obviously important inquiry—
inquiry which would have so certainly resulted in complete
information—with his lawsuit approaching, and then, after
the suit has gone against him, repair the damage which his
neglect has occasioned by a resort to equity, there can be
no end to litigation.   If by the exercise of reasonable dili-
gence a defendant may produce certain evidence disprov-
ing the testimony of the plaintiff as to defendant's conduct
and representations and tending to prove perjury on the
part of the plaintiff, and through inertia or carelessness
fails to do so, he cannot thereafter have the judgment in
said suit set aside by the production of said evidence in
an equity action for that purpose.   *Secord v. Powers,* 61
Neb. 615; *Barr v. Post,* 59 Neb. 361; *Scudder v. Evans,* 105
Neb. 292.

The case of *Krause v. Long, supra,* is substantially different from the case at bar.  In that case the defendant had no reason to disbelieve the testimony of the plaintiff to the effect that he was not aware of potash deposits on the land, and none to anticipate perjury in that connection.  In this case Gutru had every reason to disbelieve the testimony which Johnson gave in the jury case, for it was promised and even heralded in the petition.  He knew in advance that Johnson was going to testify to the conversation in question, and believed, if we credit him with sincerity, that such testimony on Johnson's part would be perjured testimony. As a matter of fact, he testified that he had no such conversation in regard to the land as Johnson detailed; and what he presented in the equity case as newly discovered evidence on the point was no more than cumulative.

But the court finds itself in agreement with the contention of the appellant on the merits.  The evidence referred to—and it was greatly stressed both in the brief and upon the argument of the appellee—is not immutable or sure proof that the latter was not in Newman Grove in the forenoon of July 31, or that the appellant perjured himself in testifying that he had a conversation with him at that time and place.  Granted that it is sure proof that appellee was in Spencer on the 30th, it is entirely possible that he might have been in Newman Grove on the morning of the 31st.  A fast automobile would have covered the distance in four hours during the afternoon of the 30th, four hours during the night of the 30th and 31st, or four hours in the early morning of the 31st.  In other words, the testimony of the appellee that he did not leave Spencer till the morning of the 31st, and that he came home by a route described by him, arriving during the afternoon, is necessary in order to make the appellant out a perjurer.

It is highly improbable that young Johnson, a good deal of a lamb in discernment as well as in years, should hand over his twenty-thousand-dollar inheritance to his banker, a large speculator in lands, in the purchase of a farm belonging to the latter, though held in the name of another,

without a word of inducement direct from the great man to the dupe. It is almost unbelievable that even such a simple one as Johnson would have invested his patrimony in such a purchase without other persuasion to buy than that shown in the record, if the talk of Gutru is excluded. The transaction bears all the trappings of fraud. The story is the old, old story, and one is constrained to believe that Johnson's recital of his relations with Gutru and of the latter's representations to him respecting the land is substantially correct. It is not strange that one so easy to befool should make a poor witness and should appear before a judge with halting tongue and hang-dog look when his mistakes and inaccuracies were being pointed out and made much of by skillful opposing counsel. The record does not bear out the finding of the district court that he procured his judgment by perjury.

It is true the record shows that the appellant swore that he was not at the farm and did not examine it for two years after the trip upon which he made his purchase. Much evidence tending to prove to the contrary was adduced during the jury trial. A number of witnesses testified that he had stated to them that he had been offered a profit of about three thousand dollars on his deal. One or two others testified that he had been on the land during said two years. Some additional witnesses swore in the equity case, notably one Samuelson, who testified he had accompanied him to the land during the period. But this was merely cumulative, and a new trial will not be granted on account of newly discovered evidence merely cumulative in character. *Campbell v. Holland,* 22 Neb. 587. Moreover, complaint on this score lacks force because the action was in damages affirming the contract of sale, and not in recission praying the return of his money paid. Hence, the fact that he had been on the land and discovered its quality and the falsity of the representation made to him respecting the same did not affect his right to recover damages, though it would have prevented a recovery in recission.

While equity holds jealously to its inherent power to set

aside a judgment at law where it is proved that such judgment was procured by perjury on the part of the judgment creditor, it will do so only when the proof is clear and convincing. *Koop v. Acken,* 90 Neb. 77; *In re Estate of Kelly,* 103 Neb. 524; *Scudder v. Evans,* 105 Neb. 292; *Krause v. Long,* 109 Neb. 846.

In *Scudder v. Evans,* 105 Neb. 292, Judge Letton said: "An extended experience of the general inaccuracy of observation and of the frailty of human nature as exhibited on the witness-stand convinces the writer that, if judgments may be opened up and set aside on the sole ground that testimony given at the hearing was false or even perjured, then comparatively few judgments would be conclusive. It is in the highest degree essential to the welfare of the community, and to the respect which should be given to and the confidence which ought to exist in the judgments of a court, that they should not be set aside unless upon the strongest and most convincing grounds." And he said further in said opinion: "It is seldom, indeed, that a judgment may be opened on account of perjured testimony. It is only when an interested party may have participated in, or conspired to commit, a fraud upon the court."

We hold to this doctrine, and, finding, as we do, that the district court erred in decreeing that the appellant's judgment in damages was obtained by perjury on his part, it follows that its decree must be reversed.

Reversed and remanded, with directions to the district court to enter a dismissal of the first cause of action, and of the case, at the costs of the appellee.

REVERSED AND DISMISSED.