### NATIONAL EXCHANGE BANK v. STELLING.

### COMMERCIAL BANK OF AUGUSTA v. SAME.

### AUGUSTA SAVINGS BANK v. SAME.

1. Where the defendant is a non-resident of the State, and cannot, after due diligence, be found therein, and a cause of action exists against him, and he is a proper party to the action, which relates to real property in this State—the court has jurisdiction of the action, and, the master being satisfied of these facts by the affidavits submitted to him, his order for the service of the summons by publication is proper.
2. The courts of this State have jurisdiction to set aside, as to real property in this State, a fraudulent assignment made in another State, even where all the parties in interest are non-residents.
3. After order for publication of summons, personal service was made in another State, proved by admissions of defendant on the record and by affidavit of the person who served it, before a notary public, who attested the same by his signature and official seal. More than a year afterwards, a clerk of a court of record certified, under his hand and official seal, to the official character of such notary. *Held,* that the defendants were properly served, and that the service was legally proved.
4. While attachments may be issued in some actions other than one for the recovery of money, an action by creditors of A against A and B, to set aside a fraudulent conveyance by A to B, and for the payment

of the debt, is. as to A (the only appellant in this court), an action for
the recovery of money.

5.  It the facts stated in the affidavit, upon which an attachment issued,
    were not sufficient to set aside as fraudulent a deed from A, the defen-
    dant debtor, to B, but did show an indebtedness by A to the plaintiffs,
    they would be sufficient to show that a cause of action existed.

6.  In the face of the clerk of court's certificate, that the undertakings in
    the attachment proceedings were filed and approved, it cannot be urged
    that they were not filed or approved.

7.  An undertaking in attachment is not sufficient to justify the issuing
    of the warrant, unless it complies with the three conditions prescribed
    by the law : (1) It must be in writing, (2) on the part of the plaintiff,
    (3) with sufficient surety.  An undertaking in writing, on the part of
    the plaintiff, would be complied with, it may be, if the plaintiff's name
    was signed to the written undertaking by some one authorized by the
    record to sign as agent for the plaintiff; but where the plaintiff's name
    was not signed to the undertaking, but it was signed by strangers—in
    one case by one person, and in another by two—the requirements of
    the law were not complied with, and, therefore, the attachments were
    set aside.  MR. JUSTICE McGOWAN, *dissenting.*

Before NORTON, J., Aiken, November, 1888.

These actions were commenced and the attachments were issued
in August, 1887.    The certificate of the clerk of court of Rich-
mond County, Ga., was as follows :

STATE OF GEORGIA,       }
    Richmond County.    }

I, William E. Keener, clerk of the Superior Court, in and for
said county, do hereby certify that Frank E. Fleming was duly
appointed and commissioned a notary public, in and for said
county, on the 24th of March, 1884 ; that his commission expired
on the 24th day of March, 1888, four years from the date there-
of; that he was such notary public on the first day of September,
1887, and, as such, is, and was, authorized by law to administer
oaths, take the acknowledgment and witness the execution of
deeds and other instruments.

Witness my official signature and the seal of said court this
October 2, 1888.                    WM. E. KEENER,
    [SEAL.]      Clerk of the Superior Court, Richmond Co., Ga.

The decree of the Circuit Judge, omitting his statement of the
case, was as follows :

The complaints state facts sufficient to constitute a cause of

action as against each of the defendants, and come up so fully in allegations to the requirements of the recent decisions upon the preference statute, that I will not, on this motion, adjudge it insufficient. The undertakings were not executed by the plaintiffs, but were procured by the plaintiffs who justify and are accepted by the clerk. Such an undertaking is, in my judgment, under the authorities and the plain reading of the code, a compliance with the requirement, that it must be "on the part of the plaintiff." which simply means on the side of the plaintiff.

The affidavits in attachment are full and complete. Neither can the motion to set aside the service of the summons and complaint prevail. The code specifically allowed personal service out of the State after an order of publication is granted. An affidavit of non-residence, setting forth a cause of action, was submitted to the master. He passed upon it as satisfactory to him. This is all that the law requires. *Yates* v. *Gridley*, 16 S. C., p. 496. The proof of service is quite sufficient, especially in view of the fact that Stelling swears he was personally served.

The motion to vacate the judgment by default is granted. It seems to me that the appearance entered by Stelling, though special and not general, was sufficient to prevent judgment. This motion being granted, it follows that the plaintiff's motions to file supplemental complaints are denied, as the judgment and executions are the substratum of said motions.

Wherefore, it is ordered, adjudged, and decreed, that the motions of the defendant, Stelling, to vacate the attachments in each of the above actions, is denied, as are also his motions to set aside the service of the summons and complaint upon him. It is further ordered, that the judgment by default, granted against the defendant, Stelling, in each of the above actions, be, and the same are, set aside, as also the executions based thereon, and he has leave, within twenty days after the filing of this decree, to serve an answer to the complaints. It is further ordered and adjudged, that the plaintiff's motions to file supplemental complaints be, and the same are hereby, denied, without costs.

*Messrs. W. T. Gary* and *Aldrich & Ashley*, for appellant.

*Messrs. Henderson Bros.* and *Croft & Chafee*, contra.

July 19, 1889. The opinion of the court was delivered by

MR. JUSTICE MCIVER. These three cases being practically identical in their facts and circumstances, and in the legal principles applicable, were heard and will be considered together. In each of the cases, the plaintiffs are foreign corporations, having their places of business in the State of Georgia, and the defendants are citizens of that State; but the actions were commenced in the Court of Common Pleas for the County of Aiken, in the State of South Carolina. The foundation of the actions in the two cases first named are unsatisfied judgments recovered in the State of Georgia by the plaintiffs therein against the defendant, Stelling. and in the last named case the action is based upon certain notes of the defendant, Stelling, in favor of the plaintiff therein.

The complaints, after alleging these causes of action in the usual form, proceeded to allege that the defendant, Stelling, some time before the recovery of said judgments, made an assignment of all of his property in the State of Georgia. preferring certain of his creditors, other than these plaintiffs, whereby the plaintiffs have been unable to realize, there, anything upon their claims, the assigned estate being insufficient to reach the same ; that on the 15th of February, 1884, the defendant, Stelling, being then insolvent, and with intent to give preference to his co-defendant, Bredenberg, for money which he then owed said Bredenberg, in fraud of the rights of the plaintiff, and against the provisions of chapter 72 of the General Statutes of this State, conveyed to the said Bredenberg certain tracts of land, describing the same, situate in the Counties of Edgefield and Aiken in this State, the same being all of the property in this State then owned by said Stelling; that the defendant, Bredenberg, having reasonable cause to believe that said Stelling was insolvent, accepted the conveyance of said lands in payment of the debt then due him by said Stelling, thereby intending to be preferred as a creditor of said Stelling, and also to defraud the plaintiffs of their debts against said Stelling, in violation of the provisions of the 72nd chapter of the General Statutes of this State; that the defendant,

Stelling, owns no other property out of which the plaintiffs can recover their debts; that the said Stelling was insolvent, and that fact was well known to said Bredenberg at the time of the conveyance to him as aforesaid, which was made for the purpose of delaying, hindering, and defeating the claims of these plaintiffs. Wherefore the plaintiffs demand judgment against the defendants as follows: 1st. For judgment against Stelling for the amounts due by him to the plaintiffs respectively. 2nd. That the conveyance to Bredenberg be declared fraudulent and set aside. 3rd. For such other relief as may be just and equitable.

An order that the summons be served by publication was granted by the master upon an affidavit to the following effect: 1st. That a cause of action exists in favor of the plaintiffs against the defendants, stating the same in general terms, and referring to the complaint for a more full statement. 2nd. That defendants are non-residents of this State, but reside in the city of Augusta, Georgia, and that they cannot, after due diligence, be found in this State. 3rd. That defendant, Stelling, has property in this State. It is stated in the "Case," "that no publication of the summons was actually made in a newspaper, but the summons in each case was actually served personally upon the defendants, F. H. Stelling and J. J. Bredenberg, in the city of Augusta, Georgia." It appears, however, that the proof of service of the summons was made by an affidavit taken before a person styling himself "notary public, Richmond County, Georgia," but there was no certificate then appended thereto, from the clerk of a court of record, that such person is such notary, as required by the act of 1884 (18 *Stat.*, 745), though such certificate has subsequently been obtained, since the service of the notice of motion to set aside the service of the summons, and is set out in the "Case." It also appears in the "Case," "that F. H. Stelling, in his sworn affidavits used at the hearing before Judge Norton, admitted that he had been personally served with the summons and complaint in each case at Augusta, Georgia, and that he was a resident of said city at time of service."

At the same time, warrants of attachment were applied for and obtained from the clerk in each of the three cases, based upon affidavits to the following effect: 1st. That Stelling is indebted

to the plaintiffs in the amounts stated on the several causes of action. 2nd. That Stelling is not a resident of this State. 3rd. That the plaintiffs have commenced action upon the several causes of action. The undertakings required by section 251 of the Code, copies of which are set out in the "Case," are in the form of ordinary bonds, but are not signed by the plaintiffs in either case, though the copy in the case first named, as set out in the "Case," does appear to be signed by "The National Exchange Bank, by Alfred Baker, president"; but it is conceded that this was written in pencil by one of the counsel, and is not claimed to be an execution of the bond by the bank. All these undertakings or bonds have been treated in the argument, and must be so regarded, as not executed by the plaintiffs themselves or by any duly authorized agent, but simply as bonds or undertakings executed by third persons, that the plaintiffs in each of the cases, respectively, "shall pay, or cause to be paid, to the said F. H. Stelling, his certain attorneys, &c., * * * all costs that may be awarded to the said defendant, and all damages which the said defendant may sustain by reason of the attachment about to be issued," &c. These bonds, as set out in the "Case," contain no endorsement showing that they had been accepted and approved by the clerk and filed by him, but we find in the "Case" a certificate of the clerk in the following words: "I hereby certify that I had approved of sufficiency of the bonds or undertakings in each of the foregoing cases before I issued the writs of attachment therein."

The defendant, Stelling, appearing for this purpose only, gave notice of two motions: 1st, to set aside the service of the summons ; 2d, to discharge the attachments upon the several grounds stated in the notice. These motions not having been heard at the next succeeding term of the court, the plaintiffs applied for and obtained judgments by default against Stelling (his co-defendant, Bredenberg, having put in an answer), and upon a return of *nulla bona* of the executions issued to enforce said judgments, gave notices of motions for leave to file supplemental complaints, setting forth the recovery of such judgments, together with the executions returned *nulla bona*, in addition to what appeared in the original complaints. Thereupon defendant Stelling gave

notice of a motion to set aside the judgments obtained by default as improvidently granted. These four motions were heard by his honor, Judge Norton, who rendered judgment, refusing the motions of Stelling to set aside the service of the summons and to discharge the attachments, granting his motion to set aside the judgments obtained against him by default, with leave to answer, and refusing the motion of plaintiffs for leave to file supplemental complaints.

From this judgment the defendant, Stelling, alone appeals, imputing error to the Circuit Judge in refusing his motions to set aside the service of the summons and to discharge the attachments, upon the several grounds hereinafter considered. There being no appeal from any other portion of the judgment, it will, as a matter of course, stand affirmed in all other respects.

We will first consider his honor's ruling as to the sufficiency of the service of the summons. The Code (section 156) provides that where the person on whom the service of the summons is to be made cannot, after due diligence, be found within the State, and that fact appears by affidavit to the satisfaction of the master or other officer therein named, and it in like manner appears that a cause of action exists against such person, or that he is a proper party to an action relating to real property in this State, such master, or other officer, may grant an order that service may be made by publication in either of the following cases. * * * "3d. Where he is not a resident of this State, but has property therein, and the court has jurisdiction of the subject of the action." And it further provides that "where publication is ordered, personal service of the summons out of the State is equivalent to publication and deposit in the post office."

It seems to us quite clear that every fact required was made to appear by the affidavit submitted upon the application for the order of publication, that the defendant is not a resident of this State, and cannot, after due diligence, be found therein, that a cause of action exists against him, and that he is a proper party to the action which relates to real property in this State; and it is equally clear that these are cases in which the service by publication is authorized, for the defendant is a non-resident, and if the allegations of the complaint are true, of which we must

assume that the officer granting the order was satisfied. it is quite certain that defendant has property in this State, and that the court has jurisdiction of the subject of the action.

It is contended, however, that as all the parties are non-residents, and it does not appear that any citizen of this State has any interest in the controversy, that the court below had no jurisdiction of a proceeding to set aside an alleged fraudulent assignment made in another State. even though the real property conveyed was situate in this State; but this position is disposed of by the recent decision in the case of *Ex parte Dickinson in re Sheldon* v. *Blauvelt*, 29 S. C., 453.

It is also urged that the proof of personal service of the summons on the defendant in the State of Georgia was fatally defective, in that the notary public before whom the affidavit of such service was made failed to append thereto the certificate of a clerk of a court of record that he was such notary, in accordance with the provisions of the act of 1884 (18 *Stat.*, 745), supplementing the provisions of section 159 of the Code in regard to the proof of service of a summons. It will be observed that this act does not require that such certificate shall be appended to the affidavit *at the time it is taken*, and, therefore, when it is considered that the only purpose of such certificate is to authenticate the official character of the person before whom the affidavit is made, and when we find that such certificate has been furnished to the court called upon to pass upon the sufficiency of the service, and when, in addition to this, we find that the defendant who raises this question has admitted under oath the fact that he was personally served, and has applied for and obtained leave to come in and answer; and when it is stated in the "Case," as one of the facts upon which this appeal is to be heard, that "the summons in each case was actually served personally upon the defendants, F. H. Stelling and J. J. Bredenberg, in the city of Augusta, Ga;" we cannot hold that the Circuit Judge committed any error of law in refusing to set aside the service of the summons, upon the ground that the affidavit of such service did not have appended to it, at the time it was taken, the required certificate. We are, therefore, of opinion that there was no error in refusing the motion to set aside the service of the summons.

We are next to inquire whether there was any error in refusing the motion to discharge the attachments. First, it is urged that an attachment cannot be obtained in cases like these, because they are actions, not for the recovery of money only, but for the purpose of setting aside a fraudulent deed. In section 248 of the Code it is declared that the plaintiff, at the time of issuing his summons, or at any time afterwards, may have the property of the defendant attached : "In any action arising for the recovery of money, or for the recovery of property, whether real or personal, * * * or against a defendant who is not a resident of this State," &c. So that it is not necessary that, in order to obtain an attachment, the action must be for the recovery of money only, but may be obtained in many other cases. Indeed, the language of that section would seem to imply that where, as in this case, the defendant is a non-resident, the remedy by attachment is obtainable in an action for any purpose. But be that as it may, it is quite clear, that so far as the appellant is concerned, the actions are for the recovery of money, and hence the first position taken cannot be sustained.

Next it is contended that the affidavits upon which the warrants of attachment were obtained were insufficient, because it does not appear therein that the plaintiffs have any cause of action. So far as the appellant is concerned, it is quite certain that a cause of action upon a plain money demand is alleged against him in each of the complaints, and therefore, even if it should be admitted that the facts stated are not sufficient to sustain an action to set aside the deed to his co-defendant, Bredenberg (which we by no means admit), this would constitute no ground upon which the appeal of Stelling could be sustained. The objection to the want of jurisdiction has already been disposed of in considering the motion to set aside the service of the summons.

We come next to the objections raised to the undertakings, *first*, that they were not approved or filed by the clerk ; *second*, that they were not executed by the plaintiffs, or by any authorized agent. The first objection is disposed of by the statement in the appendix to the "Case," that they were marked "filed" by the clerk, and by that officer's certificate set out in the "Case"

that he had approved the sufficiency of the several bonds or undertakings before the writs of attachment were issued.

The second objection, however, to the undertakings presents a question of much greater difficulty, and is, in fact, the only serious question in this branch of the case. The Code, in section 251, requires, as a condition precedent to the issuing of a writ of attachment, that the officer issuing "shall require a written undertaking on the part of the plaintiff, with sufficient surety, to the effect that if the defendant recover judgment or the attachment be set aside by order of the court, the plaintiff will pay all costs," &c. As the remedy by attachment is a summary and somewhat harsh proceeding, whereby a person may be deprived of the possession or control of his property before the claim upon which it is based has been adjudicated, the rule is well settled that one who seeks to avail himself of such a remedy must be careful to comply strictly with the conditions upon which it is allowed. The only condition with which we are at present concerned, is the giving of the required undertaking ; and that word, as used in the section above quoted from, manifestly means engagement or obligation. It seems to us that the language used in that section plainly implies that to comply with the condition precedent required, three things are necessary : 1st. That the obligation or undertaking shall be in writing. 2d. That it shall be on the part of the plaintiff. 3d. That it shall be with sufficient surety; and if either one of these three things is lacking, then it cannot be said that the condition precedent has been complied with.

It may be true that a plaintiff who procured the issue of a warrant of attachment illegally under which the defendant's property was unlawfully seized would be liable, even in the absence of any statutory provision upon general principles of law, for all damages which the defendant may thereby sustain. But in such case it would be necessary to offer parol evidence, perhaps, to show that the plaintiff had procured the issuance of the warrant of attachment, which might lead to tedious and expensive litigation. Hence the statute very properly provides that the undertaking or obligation shall be in writing. The next essential, very naturally, is that this undertaking or obligation in writing shall be on the part of the plaintiff, as it is manifestly

25 –31

proper that he who seeks to avail himself of the remedy should assume in writing the liability for any damages sustained by reason of any illegality in obtaining it.   And the third and remaining essential is, that this written obligation on the part of the plaintiff shall be "*with* sufficient surety."   It is quite clear that giving of an undertaking or obligation without any surety would not be a compliance with the statute, and it seems to us equally clear that where there is no written undertaking or obligation "on the part of the plaintiff," there is no compliance with the statute.

What, then, do the words "on the part of the plaintiff," as used in this section, mean?   Do they signify an obligation whereby a third person binds *himself* that the plaintiff will pay, or do they signify an obligation whereby *the plaintiff*, either in person or by his authorized agent, binds himself to pay ?   We are compelled to conclude that the latter is the proper signification.   The statute unquestionably requires that the obligation shall be in writing, and we do not see how it is possible for *such* obligation to be "on the part of the plaintiff," where there is nothing *in writing* whereby the plaintiff binds himself to pay ; and when to this is added the further requirement that the undertaking and obligation must be *with* sufficient surety, the necessary inference is, that there must be some one else bound besides the surety, as otherwise it could not properly be said to be an obligation *with* sufficient surety.

It is urged, however. that the words "on the part of the plaintiff" simply mean an obligation on the side of the plaintiff; and this is the view taken by the Circuit Judge.   Besides the objections above indicated to this view, it seems to us it disregards the plain meaning of the words used in the statute, for we cannot doubt that where a written obligation on the part of a person is spoken of, every one at once understands that such person has, either in person or by his agent, bound himself in writing to perform the condition of such obligation.   According to our construction of the statute, it plainly provides that before a person can obtain a warrant of attachment he must, either in person or by his duly authorized agent, enter into a written obligation, with sufficient surety, to pay all damages, not exceeding the

amount specified, which may be sustained by the defendant by reason of any illegality in obtaining the attachment, so that the defendant may be afforded a speedy and easy means of enforcing against the plaintiff, as well as his sureties, his claim for damages.

We do not undertake to say, as was intimated in one of the older cases hereinafter referred to, that it would be necessary for the plaintiff to execute a formal power of attorney authorizing his agent to execute the required undertaking, but we do think that the record should afford some evidence in writing that the agent had authority to sign the name of the plaintiff. This would be no burdensome requirement, for the plaintiff when he lodges his claim for suit in the hands of an attorney could very easily, at the same time, authorize him in writing to sign his name to any bond or other paper required in the prosecution of the suit, which, being attached to the record, would afford the defendant the ready means of prosecuting any claim for damages, as well against the plaintiff as his sureties; and surely it is nothing but right that the defendant should be afforded every facility for that purpose.

We are not aware of any case in this State which decides the point we have been considering, but the remarks of O'Neall, J., in *Myers* v. *Lewis* (1 McMull., 54), seem so pertinent to the view which we have taken, that we have been induced to quote them at length. In that case the question was as to the sufficiency of a bond given by the plaintiff's son, though not in her name, and it arose under the act of 1799, which provided "that no writ of attachment shall issue before *the plaintiff* has given bond," &c., and the court held that "none but the plaintiff, or his attorney in fact, acting in his name and stead can execute the bond. We have no right to do more than to say, *ita lex scripta*." That distinguished judge proceeds to say : "If we were, however, at liberty to reason about it, we should arrive at the same conclusion. The plaintiff suing can just as easily constitute an attorney in fact to execute the bond as he can appoint an attorney at law to sue. The defendant, too, is entitled to the security of the party professing to be his creditor to be answerable for all damages for any illegal conduct attending the suing out his attachment. If this were not so, persons absent from the

State, and having property in it, might be harrassed by attachments on unfounded claims; and the persons setting them on foot might shelter themselves behind the bond of irresponsible third persons. So, too, it is for the plaintiff's interest that he, in person or by attorney, should execute the bond. He might not be willing to incur the responsibilities of an attachment, if informed that that was his mode of redress. It is the right and duty of a party in court to be informed correctly of the consequences likely to result from the proceeding set on foot in his name. The attachment act operating *in rem*, and divesting the alleged debtor of his power of controlling his own property before the debt is ascertained by the judgment of a court, ought to be strictly construed. And hence, therefore, we should not be at liberty to seek for an interpretation beyond the plain meaning of the words."

It is true that in the subsequent cases of *Dillon* v. *Watkins* (2 Speer, 445), and *Byne* v. *Byne* (1 Rich., 441), which arose under the act of 1839, it was held that the attachment bond might be given either by the plaintiff or his agent, but those decisions rested upon the terms of that act, which required the clerk, before issuing the writ of attachment, "to take from the plaintiff, or his or her agent, a bond," and as this language was plainly alternative in its character—"take from the plaintiff, *or* his or her agent, *a* bond"—it was very properly held that if the bond in question was either a bond of the plaintiff *or* a bond of his agent, the requirement of the statute was satisfied. But the language of the statute which we are called upon to construe is not alternative in its character, and hence the undertaking now required must be an undertaking on the part of the plaintiff with sufficient surety, and nothing else will meet the requirements of the statute.

The obligations in the cases now before us do not even purport to be obligations on the part of the plaintiffs, for there is not a word in them purporting to bind the plaintiffs, but they simply purport to bind the persons who signed them to see to it that the plaintiffs will pay the damages sustained by defendant by reason of any illegality in obtaining the attachments, and therefore while they might furnish grounds of action by the defendant against the persons who signed, they certainly do not furnish any ground

for an action against the plaintiffs.  But in addition to this, as the undertakings in two of the cases are signed only by a single person, we do not see how it is possible to regard them as written undertakings on the part of the plaintiffs *with* sufficient surety, and it has been held, even under the act of 1839, in the case of *Ford* v. *Rogers* (12 Rich., 385), that the want of a surety on an attachment bond is fatal.   It is true that in the other case the so-called undertaking appears to be signed by two persons, but so far as appears they are entire strangers, who do not even profess to be the agents of the plaintiffs, and who have volunteered to guaranty that the plaintiffs will pay to the defendants such costs as may be awarded to him, and such damages as he may sustain by reason of the attachment to the amount specified. This cannot be regarded as a complicance with the terms of the statute.   It is simply an original obligation which, so far as appears, these two persons have voluntarily assumed that the plaintiffs in that case will, under certain contingencies, pay a sum of money not exceeding the amount specified.

It seems to us, therefore, that the attachments in each of the three cases above stated should have been discharged, upon the ground that the required undertakings had not been given before the warrants of attachment were issued.

The judgment of this court is, that the judgment of the Circuit Court, in so far as it refused to discharge the attachments on the ground indicated, be reversed, and that in all other respects it stand affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCGOWAN.   I concur in this judgment, except in so far as it sets aside the attachments on the ground that the plaintiff did not sign the undertaking, either personally or through an agent regularly authorized to act for him.   This is the first time this question has been made under our present law, and its practical importance requires that I should state my view of it. There is no doubt that attachment is a statutory proceeding, but it is quite as certain that it is highly remedial in character, and is made "demandable as a common right."   It seems to me that when the provisions of the law are substantially complied with,

and its whole object secured, to subject it to the strictest technical criticism, will more often defeat than promote the intent of the law. Besides, as it strikes me, the words, "on the part of the plaintiff," were not intended to make the plaintiff himself execute the undertaking, on pain of having the whole process vacated; but, on the contrary, that something else was intended. If the purpose had been to require the plaintiff, under all circumstances, to execute the required undertaking, why was it not so said in plain words "by the plaintiff," instead of "on the part of the plaintiff"? · The words in the old law were "by the plaintiff," and if the intention was that the meaning should remain precisely the same, why were they changed to "*on the part* of the plaintiff"? that is to say, as I understand it, on the plaintiff's "side," "party," "interest," "concern," "for," "in behalf of."

I concur in what was said by Mr. Justice Woodruff in the case of *Leffingwell* v. *Chave*, 19 How. Prac., 57: "The objection that the undertaking was not signed by the plaintiff or his agent, or by some person who in very terms is described on the face of the undertaking as acting 'on the part of the plaintiff,' raises a question in regard to which there has been some conflict of opinion. The language is, that 'the court or judge shall require a written undertaking on the part of the plaintiff, with sureties,' &c. In my opinion the just meaning of this language is satisfied, and all the proposed benefits to the defendant are secured, by construing the words 'on the part of the plaintiff,' as simply words of contrast or opposition to the part of the adversary; and that an approved undertaking, executed by any person of competent ability, agreeing that the plaintiff shall pay the defendant the damages which he may sustain if it be procured and furnished by the plaintiff or his attorney for the security of the defendant, is an undertaking 'on the part of the plaintiff,' within the meaning of this section. If this be not so, then 'on the part of the plaintiff' can only mean 'executed by the plaintiff.' Suits are often necessary when a plaintiff is out of the State, or sick, or under disability, or an infant, or otherwise incompetent, or unable to execute an undertaking, or to authorize an agent or attorney to do so. I cannot concede that it was intended that in such case no process of attachment should be issued. The words 'by the plain-

'tiff, with surety,' &c., had they been used, would be plain, and would require the plaintiff to execute them; but the words 'on the part of the plaintiff,' are fully satisfied if any person or persons in aid of the prosecution, acting in furtherance of the action, at the instance of the plaintiff, will peremptorily and unqualifiedly undertake that the plaintiff shall pay to the defendant the damages which he may sustain," &c.

This is my view as to what was the intention of the legislature. It is the view which, after some discussion, has prevailed in New York, and is certainly the view which, while protecting all the substantial rights of the defendant, gives to all plaintiffs equal opportunities to secure the advantages of the law. See *Leffingwell* v. *Chave*, 19 How. Prac., 57; *Howard* v. *Manderfield*, 31 Minn., 337; *Hadley* v. *Bryars*, 58 Ala., 139; *Chandler* v. *Smith*, 14 Mass., 313; *People* v. *Judges*, 5 Cow., 34; 2 *Wait Prac.*, 151.

Judgment reversed.