M. E. SMITH ET AL. v. JAMES I. BOYER ET AL.

[FILED MARCH 11, 1890.]

1. **Fraudulent Conveyances:** SUBSEQUENT DECLARATIONS OF VENDOR. While the general rule is that the declarations of a party made after he has parted with his interest in the subject-matter of the litigation cannot be received to disparage the right or title of one who acquired the same in good faith before such

declarations were made, yet this rule does not apply to transfers of property made for the purpose of defrauding creditors. In such case the fraudulent character of the transfer being proved, the declarations and acts of the vendor, made shortly after the alleged transfer, and before the rights of innocent parties intervened, may be shown as circumstances in corroboration.

2. ———: EVIDENCE examined, and *held*, to sustain the grounds of attachment set forth in the affidavit therefor.

3. ———: ATTACHMENT.  A creditor may take adequate security from a failing debtor without being chargeable with seeking to hinder and delay other creditors, but where a debtor, heavily indebted, makes a mortgage upon all his property to one creditor, the security being greatly in excess of the amount of the debt, and the effect will be to prevent other creditors from collecting their claims out of the residue, an attachment, on the ground of fraudulent disposition of the property on the facts stated in the opinion, will lie against the debtor.

ERROR to the district court for Red Willow county. Tried below before COCHRAN, J.

*R. M. Snavely,* and *E. M. Bartlett,* for plaintiffs in error.

*G. M. Lambertson, Rittenhouse & Starr,* and *H. W. Keyes, contra.*

The contentions and citations of counsel are the same as in *Britton v. Boyer,* 27 Neb., 522.

MAXWELL, J.

On the 24th of September, 1887, the defendants executed and delivered to the First National Bank of Indianola and L. J. Holland a chattel mortgage upon "all their general stock of merchandise, consisting of dry goods, groceries, boots and shoes, hats and caps, crockery, clothing, notions, jewelry, safe and show cases, fixtures, and all their other goods and merchandise contained in the brick building, store houses, and basement situate on lot 6, block 33, in the town of Indianola, Nebraska; also, our books

and book accounts held and owing to us, the said firm of Boyer & Davidson, on account of their business in said store above named," to secure the payment of $5,336.46, of which sum $2,000 is alleged to have been due the bank and the remainder to Holland.

The exact value of the property mortgaged does not appear, but there is testimony that the goods were of the value of about $12,000, while the amount due on the accounts is not shown. On the 26th day of September, 1887, the plaintiffs commenced an action by attachment against the defendants, the grounds therefor, as stated in the affidavit for an attachment, being "that the defendants have sold, assigned, and disposed of their property with the fraudulent intent to cheat and defraud their creditors and hinder and delay them in the collection of their debts, and are about to sell, assign, and dispose of their property with the fraudulent intent to cheat and defraud their creditors and hinder and delay them in the collection of their debts, and that they are about to convert their property into money for the purpose of placing it beyond the reach of their creditors, and are about to sell, assign, and dispose of a part of their property with intent to defraud their creditors, and have sold, assigned, and disposed of a part of their property with the intent to defraud their creditors." Upon this affidavit being filed, and a like affidavit for garnishment and an order of the court obtained, part of the debt not then being due, a writ of attachment was issued and delivered to the sheriff at 8 o'clock P. M. of said day and returned, "Not being able to come at the property of Boyer & Davidson, or James I. Boyer or Charles B. Davidson, members of said firm, claimed to be in the possession of L. J. Holland, J. W. Dolan, the First National Bank," etc., "notice was served upon the persons garnished—naming them, and requiring them to appear and answer," etc.

The defendants filed a motion, supported by affidavits, to dissolve the attachment upon substantially two grounds,

viz.: Irregularity in procuring the same, and because the grounds upon which the attachment was granted were untrue. Affidavits in opposition to and in support of the attachment were thereupon filed and on the final hearing the attachment was discharged and the garnishees released. The dissolution of the attachment is now assigned for error. .

It seems to be conceded by the attorneys for the plaintiff that the claim of the National Bank is *bona fide,* and probably that of Holland. The chattel mortgage seems to have been procured through the instrumentality of the latter.

A debtor in failing circumstances may pay one or more of his creditors, provided he deliver him no more than sufficient to pay the debt.

In *Elwood v. May Bros.,* 24 Neb., 375, it is said: "A creditor may obtain from a failing debtor payment in full of his claim, and he will not be chargeable upon that ground alone of seeking to defraud other creditors. Neither will the fact that the claim is paid in goods of no greater value than the amount of the claim, of itself, establish the fraudulent character of the transaction. So far as the testimony discloses, the defendants in error were paid in goods of value not exceeding the amount of their claims against Cramer." To the same effect: *Rothell v. Grimes,* 22 Neb., 526; *Leffel v. Schermerhorn,* 13 Id., 342; *Shelly v. Heater,* 17 Id., 505.

The case of *Grimes v. Farrington,* 19 Neb., 49, is not in conflict with these decisions, the exact value of the goods mortgaged not being shown. The highest estimate in that case was about $14,000, while the debts secured exceeded $9,000. It did not appear that the property would sell for more than the amount of the debts.

While a *bona fide* creditor has a right to secure his claim, yet he has no right to tie up all the property of his debtor where all of such property greatly exceeds in value the amount of the debt secured; in other words, while he

may take adequate security for his own claim, he cannot hinder and delay if not defraud other creditors in the collection of their claims by placing the debtor's property beyond their reach. If he do so he violates the law prohibiting fraudulent conveyances. The fact that he is a creditor does not give him a license to tie up property of the debtor not necessary for his own security, and prevent its application to the payment of other debts owing by the debtor, and if the debtor assigns him all his property to secure a grossly inadequate debt, other creditors have good cause to complain that the transfer is fraudulent as to them.

In the case at bar the defendants had conveyed all their property to the mortgagees. Such property is shown to have been greatly in excess of adequate security for the debts, and *prima facie* was sufficient to justify an attachment upon the grounds specified in the affidavit therefor.

Fraud can rarely be proved by direct evidence, and in most cases necessarily must be shown by facts and circumstances, and among those which may be proved against himself are the declarations and acts of the debtor while claiming an interest in the property which he asserts he has conveyed.

Thus, in *Campbell v. Holland*, 22 Neb., 596, the court, by Cobb, J., quoting from *Carney v. Carney*, 7 Baxt. [Tenn.], 284, say: " 'As a general rule, the declarations of a party made after he has parted with his interest in the subject-matter of litigation cannot be received to disparage the title or right of a party acquired in good faith previous to the time of making such declarations. But this very just and reasonable principle must be taken as inapplicable to cases of fraudulent sales of property. If, for example, a conveyance is made absolute on its face, and the vendor continues to retain possession of the property as before, this being *prima facie* evidence of fraud, a creditor, impeaching such conveyance on the ground of fraud, may

be admitted to prove the declarations of the vendor, thus retaining the possession in relation to the ownership, or the character of his possession of the property.'"

A number of statements made by Boyer, and acts done by him shortly after the attachment was levied, and while he still claimed an interest in the property that tends to support the charge that the transfer was made to defeat certain of his creditors, is shown by the record, while the sheriff in an affidavit states "that on the 19th day of October, 1887, I had subpœnas put into my hands by J. H. Berge, of Indianola, a notary public in the above entitled cases, and also in behalf of Nave & McCord, in their claim against Boyer & Davidson, to subpœna said James I. Boyer in all of said cases and Chas. P. Davidson and Matilda Davidson and others, in said above entitled cases, to appear before said notary public and give their depositions in said cases respectively on the 21st and 22d days of October, 1887, as shown by my returns on said subpœnas, and that said subpœnas were received on the 19th of October, 1887. That about the time said subpœnas were received said James I. Boyer was here in town, but I made diligent search for him and could not find him anywhere. His wife had already gone away. I went to his house on the 19th, and on the 20th, and on the 21st of October, 1887, and knocked at the door, and it was locked. After some talking of some persons in the house, and after some little time, L. J. Holland came to the door, and on being asked where Boyer was, said he was not there and did not know where he was; and that L. J. Holland was the only one to be seen in the house, although affiant did not search the house. I searched diligently in the county and in this town for said James I. Boyer, but could not find him. I learned that he had been seen riding his trotting horse across into Kansas since I received said subpœnas. I have good reasons to believe, and do believe, that the said James I. Boyer knew that said subpœnas were in my hands before

he left, and that he secreted himself and hid away from me and absconded into the state of Kansas to avoid the service of said subpœnas, and to avoid giving his testimony in the above entitled and above mentioned cases. That said Matilda Davidson left on the train on the very same day that said subpœnas were placed in my hands to take her depositions, and, as I am informed, went to Denver.

"The said James I. Boyer said to me about the time I was serving the execution on said oats heretofore mentioned, that I would not get his horse, referring to the trotting horse which I had had orders to serve execution against; that I thought I was pretty sharp, but I would not get the horse; he knew where it was but I would not get it, and he would not tell me where it was. I was told that some one was seen driving that horse that evening out west of town. Went out to Steve Lyons' place, but not finding the horse there came back. I met said James I. Boyer in the road about a mile out of town and he skulked off in the weeds to keep me from knowing who he was. I searched diligently for the horse but could not find him. I verily believe, and have good reasons to believe, that he was hiding away, secreting, and concealing said horse to prevent me from serving the execution against it, and to prevent his creditors from appropriating it to the payment of their demands, and that he has removed said animal out of this state with intent to keep me from serving said execution at that time in my hands."

These statements are not denied by Boyer.

In the affidavit of the defendants for the dissolution of the attachment they swear to the honesty of their intentions. This statement would have had much greater weight if they had come into court and made a full and detailed statement of their business and the assets still in their hands, if any. Had they done so, perhaps it would have been unnecessary to swear to a mere conclusion, and the latter is entitled to but little weight.

The evidence fully sustains the grounds for the attachment, and the court erred in discharging it. The judgment of the district court is reversed, the attachment reinstated, and the cause remanded for further proceedings.

JUDGMENT ACCORDINGLY.

THE other judges concur.