## BLACK HILLS MERCANTILE CO. · V. GARDINER *et al.* ·

1.   Under Section 4996, Comp. Laws, providing that, before an attachment can issue, the clerk must require "a written undertaking on the part of the plaintiff, with sufficient sureties," etc., it is not necessary that such undertaking be signed by the plaintiff, but, when a sufficient undertaking is given in behalf of the plaintiff, the requirements of the statute are complied with.

2.   When a chattel mortgage stipulates that he may, or the mortgagee knowingly allows the mortgagor to, retain possession of and sell the mortgaged goods in the usual course of trade, without any agreement or understanding as to the disposition of the proceeds, the mortgage is presumptively fraudulent.

3.   The presumption against the good faith of the mortgage is a rebuttable one, and, upon substantial evidence tending to show its actual good faith, the question as to its real character becomes a question of fact.

4.   Failure to promptly file a chattel mortgage for record is not a sign of fraud, and those only can complain of such failure who are prejudiced thereby.

5.   Under our statute, which makes a chattel mortgage a lien only on the mortgaged property, and allows a creditor to levy upon the mortgaged property after paying or tendering the amount for which such mortgage is an actual and *bona fide* lien, the taking of a mortgage upon $10-000 worth of property to secure a debt of $1,800 is not, on that account, fraudulent.

6.   The further facts in this case tending to show the character of the mortgage and the transactions connected therewith examined, and, upon all the evidence, *held*, that the transaction is not fraudulent in fact, and did not furnish grounds for an attachment.

(Syllabus by the Court.   Opinion filed April 3, 1894.)

Appeal from circuit court, Lawrence county.   Hon CHAS. M. THOMAS, Judge.

Action in attachment by the Black Hills Mercantile Company against Charles H. Gardiner and Merritt J. Bailey, partners.   From an order discharging the writ issued, plaintiff appeals.   Affirmed.

The facts are stated in the opinion.

*Wood & Buell* and *McLaughlin & McLaughlin*, for appel-lants.

A chattel mortgage upon a stock of goods containing a provision authorizing the mortgagor to retain possession of the goods and sell them in the ordinary course of trade, and not apply the proceeds to the mortgage debt, is invalid, and the court can, as a matter of law, pronounce it void,—at least pre-sumptively so. Robinson v. Elliott, 22 U. S. 520; Greeley v. Windsor, 45 N. W. 325; Greeley v. Windsor, 48 N. W. 214; Callagher v. Rosenfield, 50 N. W. 696; Collins v. Meyers, 16 Ohio St. 547; Freeman v. Rawson, 5 Ohio St. 1; Harmon v. Ab-bey, 7 Ohio St. 218; Griswold v. Sheldon, 4 N. Y. 581; Twyne's Case, 3 Co. 80; Ryall v. Rowels, 1 Ves. Sr. 348; Addington v. Etheridge, 12 Gratt. 436; Ball v. Slafter, 26 Hun. 353; Smith v. Cooper, 27 Hun. 565. Bainbridge v. Richmond, 17 Hun. 391; Mc-Laughlin v. Wright, 3 Wend. 348; Drover v. McLaughlin, 2 Wend. 596; .Wood v. Lowry, 17 Wend. 492; Stoddard v. Butler 20 Wend. 507; Edgell v. Hart, 13 Barb. 380; Edgell v. Hart, 9 N. Y. 213; Gardner v. McEwen, 19 N. Y. 123; Mittnacht v. Kel-ley, 3 Keyes, 407; Russell v. Winne, 47 N. Y. 591; Southard v. Benner, 72 N. Y. 424; Brachett v. Harvey, 91 N. Y. 214: Co-burn v. Pickering, 3 N. H. 415; Ranlett v. Blodgett, 17 N. H. 298; Putnam v. Osgood, 52 N. H. 148; Horton v. Williams, 21 Minn. 187; Place v. Langworthy, 13 Wis. 629; Steinart v. Den-ster, 23 Wis. 136; Bishop v. Warner, 19. Conn. 460; Davis v. Ransom, 18 Ill. 376; Walter v. Wimer, 24 Mo. 63; Stanley v. Bruce, 27 Mo. 269; Armstrong v. Tuttle, 34 Mo. 432; Lodge v. Samuels, 50 Mo. 204; White v. Graves, 68 Mo. 218; Welsh v. Bikey, 1 P. 57; Homer v. Geessaman, 17 S. & R. 251; Williams v. Lord, 75 Va. 390; Mann v. Flower, 25 Minn. 500; Lund v. Fletcher, 39 Ark. 325; S. C. 43 Am. Rep. 270. And it is not important whether such permission is given the mortgagor by the mortgagee in the mortgage itself, or whether it is estab-lished by extrinsic evidence, for where the mortgagor, with the mortgagee's knowledge, acquiescence or consent, continues to

dispose of the mortgaged chattels, without applying the proceeds or any part thereof to the reduction of the mortgage debt, the existence of these facts, whether shown by the instrument itself or by evidence *aliunde*, wholly invalidates the transaction as to the creditors.   Wilson v. Voight, 3 P. 726; Huschle v. Morris, 23 N. E. 645; Standard Implement Co. v. Schultz, 25 P. 625; Aiken v. Pascall, 24 P. 1039; Leopold v. Silverman, 16 P. 580; Leser v. Glaser, 4 P. 1026; Rochelieu v. Boyle, 28 P. 872; Greeley v. Winsor, 48 N. W. 214; Brown v. Barker, 28 P. 184; Hangen v. Hachemeister, 21 N. E. 1046; Bracher v. Christophe 15 P. 403; Southard v. Bemer, 72 N. Y. 424; Steinart v. Deuster, 23 Wis. 136; Russell v. Wimer, 37 N. Y. 591.   A fraudulent chattel mortgage of the character above mentioned is a disposition of property by the debtor with the intent to hinder, delay and defraud creditors within the meaning of our statute, and affords good ground for attachment.   Anderson v. Patterson, 25 N. W. 541; Seigleberg v. Hersch, 4 P. 705; Leser v. Glaser, 4 P. 1026; Buford & George Imp. Co. v. McWhorter, 21 P. 86; Smith v. Boyer, 45 N. W. 265; Robinson v. Ormsby. 50 N. W. 952; Gallagher v. Goldfrank, 12 S. W. 964.

The attachment should have been sustained because of the sale of Gardner's interest to one Hanley, in consideration of a note for $1,500, executed with a secret understanding that it was not to be placed in circulation nor negotiated.   This note was given to the mortgagee bank as additional security to the bank and the effect of the transaction was to place assets of the value of $1,500 beyond the reach of other creditors.   Gallagher v. Goldfrank, 12 S. W. 964; Buford v. McWhorton, 21 P. 87; Robinson Notion Co. v. Ormsby, 50 N. W. 952; Rogers v. Jones 1 Neb. 417.

The attachment should have been sustained on account of the excessive security given by the mortgage.  Smith v. Boyer, 45 N. W. 265.

*Martin & Mason*, for respondents.

The undertaking upon attachment was not executed by the plaintiff, or by any officer or agent acting in its behalf; it was

therefore insufficient to sustain the attachment. Hisler v. Carr, 34 Cal. 641; Drake on Attachment, Secs. 131, 132, 133; Comp. Laws, Sec. 4996; Board of Education v. Sweeney, 48 N. W. 302; Green v. Kindy, 5 N. W. 297; Bean v. Parker, 17 Mass. 591; Ferry v. Burchard, 21 Conn. 602; Wade on Attachment, Sec. 104; *Ex parte* Brooks, 7 Cowan 428.

The findings of trial courts upon questions of fact will not be disturbed when the evidence is conflicting. Cannon v. Denning, 53 N. W. 863; Jeansch v. Lewis, 48 N. W. 128; Brewing Co. v. Mielenz, 5 Dak. 136; Brewing Co. v. Elevator Co., 5 Dak. 62; Finney v. Railroad Co. 3 Dak. 270; Moline Plow Co. v. Gilbert, 3 Dak. 239; Caulfield v. Bogle, 2 Dak. 464; Vreeland v. Pratt, 17 N. Y. 307. The question of fraud in this case is a question of fact. Bank v. Steele, 45 N. W. 579; Tarlma v. Therlieht, 21 Pac. 68; Comp. Laws, § 4659; Greeley v. Winsor, 48 N. W. 214; Bank v. North, 51 Rep. 96; Bank v. Bates, 120 U. S. 561; Jones on Chattel Mortgages, § 340; 1 Cobbey on Chat. Mortgages, §§ 219 to 312; Gay v. Bidewell, 7 Mich. 519; People v. Bristol, 35 Mich. 28; Etheridge v. Sperry, 139 U. S. 266; 11 Sup. Ct. Rep. 565; Bett v. Carter, 2 Law 458, 3 Cent. Law J. 286; Jones Chat. Mort. § 412; Cobbey Chat. Mort. § 232; Hughes v. Carey, 20 Io. 14, 7 N. W. Rep. 386; Williams v. Evans, 6 Neb. 216; Horton v. Williams, 21 Minn. 187; Ewing v. Gray, 12 Ind. 64; Maple v. Burnside, 22 Ind. 139; Nuller v. Lockwood, 32 N. Y. 293; Banfield v. Whipple, 14 Allen 13; Briggs v. Parkman, 2 Metcf. 258; Frahkhauser v. Ellett, 22 Kan. 127; Whitson v. Griffis, 39 Kan. 211, 17 Pac. 481; DeFord v. Nye, 40 Kan. 665, 20 Pac. 481; Oliver v. Eaton, 7 Mich. 107; Bagg v. Jerome, 7 Mich. 145; Bank v. Bates. 120 U. S. 561, 7 Sup. Ct. Rep. 679, 681; Lane v. Star, 45 N. W. 212. The mere fact that the mortgagor continued to sell the mortgaged goods with the knowledge of the mortgagee is not proof of the agreement between the parties for such sale, and does not render the mortgage fraudulent. Jones on Chat. Mortgages, § 424; Hewson v. Tootle, 72 Mo. 632; Brackett v. Harney, 91 N. Y. 214;

Vreeland v. Pratt, 17 N. Y. 307. A mortgage with the sale clause should not be considered even presumptively fraudulent. Horton v. Williams, 2 Minn. 187, 192; Peabody v. Landon, 61 Vt. 318, 17 Atl. Rep. 781; 1 Cobby Chat. Mortgages, § 300.

The mortgage was valid against creditors from the time that possession was delivered, whether valid against them before such delivery or not. Bank v. Anderson. 24 Minn. 435; Dobyns v. Myer, 95, Mo. 132, 8 S. W. Rep. 251; Jones on Chat. Mortgages, § 178; Petring v. Heer Dry Goods Co., 90 Mo. 650, 3 S. W. Rep. 405; Cameron v. Marvin, 26 Kan. 612; Clute v. Steele, 6 Nev. 339; Frank v. Miner, 50 Ill. 444, Brown v. Webb, 20 Ohio 389; Close v. Denny,. 130 Mass. 566.

Delay in recording a chattel mortgage is not a badge of fraud. The excess of property over the amount secured is not a badge of fraud. Bank v North, 51 N. W. 99; Cameron v. Marvin, 26 Kan. 612. 627.

It was necessary to have shown actual fraudulent intent in order to sustain the attachment. Constructive fraud if established would not have been sufficient. Comp. Laws, § 4995; Milliken v. Dart, 26 Kan. 26; Morris v. Talcott, 96 N. Y. 100; Drale on Attachment, § 74; Spencer v. Deagle, 34 Mo. 455; Bank v. Steele, 45 N. Y. 579; Rhode v. Matthai, 35 Ill. 147; Shove v. Farwell, 9 Ill. 256. Bank v. Kurtz, 22 Ill. 213; Torlina v. Thorlicht, 21 Pac. 68; Eaton v. Wells, 18 Minn. 410; Leser v. Glaser, 32 Kan. 553, 4 Pac. 1026; Hosea v. McClure, 42 Kan. 553; Wyman v. Wilmarth, 46 N. W. 190; Hills v. Furniture Co. 23 Fed. 432; LaBelle Iron Works v. Hill, 22 Fed. 195.

KELLAM, J.    This is an appeal from an order of the circuit court of Lawrence county discharging an attachment. The grounds of the motion to discharge were: First, that the allegations of the attachment were untrue; and, second, that no sufficient undertaking was given, it not being required by the plaintiff. Section 4996, Comp. Laws, requires that, before an attachment can issue, the clerk must require a "written under-

taking on the part of the plaintiff, with sufficient sureties," etc. In this case the undertaking was not signed by the plaintiff, but was signed by two sureties. The sureties justified, and the clerk approved. Under a statute using the same terms,—"on the part of the plaintiff, with sufficient sureties,"—it has been definitely held in several cases, that it is unnecessary that plaintiff should sign, or that there should be a principal obligor. See Howard v. Manderfield, 31 Minn. 341, 17 N. W. 946; Pierse v. Miles, 5 Mont. 551, 6 Pac. 347; Leffingwell v. Chave, 19 How. Pr. 57. There are cases holding otherwise, as in Bank v. Stelling (S. C.) 9 S. E. 1028, where McGowan, J., dissents. Our own court in Board of Education v. Sweeney, 48 N. W. 302 recognizes the distinction, and the reason for it, between the requirement of the statute that an elected officer shall "give bond," and the requirement, in case of provisional remedies, that there shall be given "an undertaking on the part of the plaintiff, with sufficient sureties." In this case the undertaking was not required to be given "by the plaintiff" but "on the part of the plaintiff,"—that is, on the side of the plaintiff; in behalf of the plaintiff. We think, when others, of approved competency and sufficiency, gave the undertaking in behalf of the plaintiff, the requirements of the statute were complied with, and its object accomplished. The attachment, then, should not have been discharged on account of the insufficiency of the undertaking.

The other ground of the motion was the untruthfulness of the affidavit upon which the attachment was issued. These allegations were that "the defendants have assigned and disposed of, and are about to assign and dispose of, their property, with intent to defraud their creditors." We think the following facts are practically undisputed: Gardiner and Bailey were partners having two stores, one at Deadwood and the other at Custer City, the business of each being distinct from that of the other. On the 3d day of May, 1892, they gave a mortgage on their Custer City stock to the First National Bank of Custer

City for $1,950. On the 6th day of May, 1892, they gave a
mortgage on their Deadwood stock to the same bank for $1,790.
The second of these mortgages was not filed for record until
May 24, 1892, and the other May 23, 1892. They were then
filed on account of rumors which reached the bank that the
mortgagee's creditors were crowding them. The value of the
Deadwood stock so mortgaged was about $10,000. From the
time the mortgage was given on the Deadwood stock until it
was attached in these proceedings, the mortgaged goods re-
mained in the possession of the mortgagors, and were sold in the
regular course of retail trade as before, and up to the time of
the attachment no part of the proceeds had been applied on the
mortgage debt. The mortgage contained no express provisions
as to sales by the mortgagors, or as to dispositions of proceeds.
The mortgagee, the Custer Bank, knew, however, that such
sales were being made. On the 5th day of May, 1892, Gardiner
sold his half interest in the Custer City stock to Hanley, who
was cashier of the mortgagee bank, taking his note therefor for
$1,500, which he turned over to the bank as collateral security
to his said indebtedness to that bank of $1,950. The bank took
possession of the Deadwood stock under their mortgage on the
morning of May 25th, and prior to the levy of the attachment.
The same stock was afterwards attached in this proceeding,
and the Deadwood stock is the property involved in this action.

It is contended by appellant that, although the mortgage
contained no provision or stipulation allowing the mortgagors
to retain possession and sell in the ordinary course of trade
without applying the proceeds to the mortgage debt, still, it
being established that the goods were so sold with the knowl-
and acquiescence of the mortgagee, the effect is the same as
though such permission were in the mortgage itself. Allowing
this conclusion to be entirely correct, the mortgage was pre-
sumptively fraudulent only. The mortgage does not stipulate,
nor does the evidence, as we will notice later, show, that the
mortgagors were to be, or were, allowed to dispose of the mort-

gaged property for their own benefit, but only that, with the knowledge of the mortgagee, they did sell the goods in the usual course of retail trade. The direct testimony is that there was no agreement that the proceeds of sales might be used for any purpose other than to pay the mortgage debt. But the presumption against the *bona fide* character of the mortgage was a rebuttable one, and upon substantial evidence tending to show its actual good faith, the question as to its real character became a question of fact. Greeley v. Winsor, (S. D.) 48 N. W. 216. This conclusion was deliberately reached by this court upon careful consideration and after reargument, and it is the law of this jurisdiction. Therefore, we do not stop to examine the cases cited by appellant, holding such a mortgage conclusively fraudulent. In most of the cases cited there was evidence of an affirmative agreement or understanding, either within or without the mortgage, that the mortgagor might not only sell, but that he might dispose of the proceeds as he pleased, or for his own benefit. We do not find the fact so here, and believe, under the rule adopted in Greeley v. Winsor, *supra*, that the question of the *bona fide* or fraudulent character of this mortgage was one to be determined upon all the evidence as a question of fact. Under Section 5237, Comp. Laws, however, we do not treat the finding of the court upon a question of fact as equally conclusive with the verdict of a jury. Randall v. Burke Twp. (S. D.) 57 N. W. 4. We will, therefore, examine the evidence with a view of ascertaining whether the conclusion of the trial court was correct in finding that the mortgage was in fact not fraudulent. It is not claimed but that the indebtedness which it purported to secure was an actual and honest one, and there is nothing on the face of the mortgage to indicate its fraudulent character. The mortgage was kept from the record from the date of its execution, May 6th, to May 24th. It is in evidence that this was not in pursuance of any agreement or understanding between the parties. Such withholding from record would not be a ground of complaint by plaintiff

unless it operated to their prejudice in some way. Bank v. North, (S. D.) 51 N. W. 99. If this indebtedness had been incurred by defendants after this mortgage was given, and while it was withheld from record, and so from the knowledge of the plaintiff, the plaintiff might complain, for then the credit would presumably have been given on the strength of a stock which was in fact incumbered by mortgage, but which plaintiff, who held the mortgage, allowed to be understood and reputed as unincumbered, and made the basis of a fictitious credit; but the indebtedness upon which this attachment was brought was incurred and was due long before the mortgage was made. It does not, therefore, appear how the plaintiff could or would have been in any better condition, in respect to compelling payment, if the mortgage had been filed for record immediately upon its execution. During the time the mortgage was thus unfiled, defendants' indebtedness to plaintiff was not increased; nor does it appear that their ability to pay was diminished by any material dispersion of their assets; and we are unable to see how delay in filing resulted in any injury to plaintiff, or was, under the circumstances, evidence of any fraudulent intent on the part of either the bank or the defendants.

Nor do we think the giving of a mortgage to secure $1,790 on a stock of goods worth $10,000 was, alone, any evidence of a fraudulent intent. Defendants had a right to give a mortgage to reasonably secure their indebtedness to the bank. It would have been impracticable to give it on an undivided portion of the stock, and equally on certain enumerated articles. It is doubtful if, under the law of this state, any margin, however large, between the debt and the security, would be a badge of fraud. By Section 4658, Comp Laws, "a creditor can avoid the act or obligation of his debtor for fraud only where the fraud obstructs the enforcement by legal process of his right to take the property affected by the transfer or obligation;" and Sections 4388 and 4389 definitely declare that the creditor may enforce his right notwithstanding the mortgage, and provide

how it may be done.  Bank v. North, (S. D.) 51 N. W. 101; Downs v. Kissam, 10 How. 102.  Smith v. Boyer, 45 N. W. 265, cited by appellant on this point, is from Nebraska, and is not applicable.  There the chattel mortgage conveys the title to the mortgagee, and the mortgaged property is thus "tied up," as expressed in the opinion in that case.  Here the title is not conveyed, and the mortgage presents no obstruction to the creditor's attachment, except to the extent that it is already hypothecated.

There was considerable evidence tending to show (and nothing to the contrary) that, from the time the mortgage was made until it was filed, there was nothing drawn from the stock by either of the defendants, and that no part of the proceeds of sales, during that time, was used for the benefit of either.  It was shown on the part of plaintiff, by the testimony of defendants' bookkeeper, that from the 6th day of May, the date of the mortgage, to the 24th, the date of its filing, the cash sales from the stock amounted to $699.25, and from collections $1,659.08. The mortgage did not cover the credits and accounts of the de fendants (mortgogors), and the mortgagee could not control, and was not responsible for, the disposition of collections therefrom.  The bookkeeper testified: "The cash taken was paid for merchandise and expenses, and deposited in the bank.  The money, except what was deposited, all went to pay accounts of the store and expenses.  We paid cash for produce daily; paid out as high as $6 for butter one day.  The rest of the money was all used this way.  All the things bought with the money were placed in the store and used there."  Defendants kept their Deadwood account with the First National Bank of that city. At the date of the mortgage they were overdrawn at that bank from $600 to $700.  On the 24th, when the mortgage was filed, they had a credit there of $464.33, but the overdraft was not necessarily paid from sales of the mortgaged stock.  Of the $699.25 resulting from sales of the mortgaged stock, there was in the bank, to the credit of the mortgagors, $464.33, leaving

$224.92, proceeds of such sales, to cover such expenditures and purchases, as testified to by the bookkeeper, and the miscellaneous expenses of the store for the time.    We discover nothing in these facts to show the transaction fraudulent.    After a reasonably thorough study of all the evidence in the case, and the application to it of the legal rules and principles which we think should control its effect, we are of the opinion that the trial court committed no error in discharging the attachment.    The judgment is therefore affirmed.